**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

JOSE A. RODRIGUEZ,
           *Defendant-Appellant.*

No. 07-10217

D.C. No.
CR-05-00397-KJD

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
February 12, 2008—San Francisco, California

Filed March 10, 2008

Before: William C. Canby, Jr., David R. Thompson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

2213

**COUNSEL**

Jason F. Carr, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Timothy S. Vasquez, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

Defendant-Appellant Jose A. Rodriguez appeals from the district court's denial of his motion to suppress incriminating statements that he claims National Park Rangers obtained in violation of his *Miranda* rights. The district court held that, under *Davis v. United States*, 512 U.S. 452, 462 (1994), the Rangers did not have a duty to stop questioning Rodriguez because he did not unambiguously and unequivocally assert his right to silence in response to the Park Ranger's *Miranda* warning. We reverse, and hold that the "clear statement" rule of *Davis* applies only *after* the police have already obtained an unambiguous and unequivocal waiver of *Miranda* rights. Prior to obtaining such a waiver, however, an officer must clarify the meaning of an ambiguous or equivocal response to the *Miranda* warning before proceeding with general interrogation.

**I.   FACTUAL BACKGROUND**

On October 8, 2005, National Park Service Ranger Dustin Gunderson observed Appellant-Defendant Jose Rodriguez

driving his pick-up truck erratically through Lake Mead National Recreation Area, west of Las Vegas. Gunderson suspected that the truck's driver was intoxicated, so he stopped the truck. After running Rodriguez's driver's licence and learning from his radio dispatcher that Rodriguez was a registered felon, Gunderson asked Rodriguez to step out of the truck so Gunderson could perform a field sobriety test. As Gunderson stepped back to administer the test, he noticed the handle of a pistol protruding from an open orange bag in the bed of Rodriguez's truck. This pistol, identified as a Ruger .22 caliber pistol, had a device, later determined to be a home-made silencer, attached to it. After securing the firearm, Gunderson asked Rodriguez if there were any other weapons in the vehicle. Rodriguez admitted that there was another firearm under the driver's seat. This was later identified as a Para-Ordnance .40 caliber pistol. Ranger Gunderson called for backup, then placed Rodriguez under arrest and detained the two passengers in Rodriguez's truck.

After he and his backup, Ranger Bill Reynolds, secured the scene, Gunderson read Rodriguez his *Miranda* rights. Gunderson then asked Rodriguez if Rodriguez wished to speak to him. Rodriguez responded, "I'm good for tonight." Gunderson later testified that he understood this to mean that Rodriguez was willing to talk, but he did not immediately begin interrogation. Rather, a "short time later," Reynolds began questioning Rodriguez while Gunderson contacted his supervisor. In response to Reynolds's questions, Rodriguez admitted that the bag, and the gun and silencer it contained, belonged to him.

Rodriguez was ultimately charged with two counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1)— count I for the Para-Ordnance .40 caliber, count II for the Ruger .22 caliber[1]—and one count of possession of an unli-

---

[1]Rodriguez raises a multiplicity challenge to these two charges of 18 U.S.C. § 922(g)(1). Because we reverse the district court's evidentiary determination, we do not address the multiplicity claim. However, since the government has conceded multiplicity, we do not anticipate a continuing problem with multiplicity on remand.

cenced silencer, 26 U.S.C. § 5861(d). Rodriguez filed a pre-trial motion seeking to suppress both the physical evidence and the statements he made to the Rangers. He claimed several Fourth Amendment violations concerning the scope of the traffic stop.[2] He also alleged that the Rangers obtained his statements in violation of *Miranda* because he had invoked his right to silence. The district court ordered an evidentiary hearing before a magistrate judge, who conducted a hearing exploring the circumstances of the seizure and the statement. Only Gunderson testified as to the circumstances of the *Miranda* warning.

The magistrate judge denied the motion to suppress. The court held that Gunderson "reasonably construed the response 'I'm good for tonight' as a waiver of his *Miranda* rights based on his observation of Rodriguez's demeanor and gestures and the context in which the response was made." The magistrate further noted:

> Additionally, because this statement is susceptible of different meanings, it is, definitionally, ambiguous. The statement "I'm good for tonight" could reasonably mean "I'm willing to talk tonight" or "I don't want to talk tonight." Thus, even if another law enforcement officer in Gunderson's position would not have reasonably construed the phrase as a waiver, the court joins those courts which have decided that officers are not required to cease questioning altogether, or to limit questions to clarify whether a suspect intends to invoke the right to remain silent unless the suspect clearly expresses his wish to remain silent.

The magistrate judge stated that, in *Davis v. United States*, 512 U.S. at 462, the Supreme Court "held that once a law enforcement officer administers *Miranda* warnings to an indi-

---

[2]Rodriguez does not pursue the Fourth Amendment issue on appeal.

vidual, that individual must explicitly and unambiguously invoke his or her right to counsel to prevent further questioning." Holding that this rule applies to invocations of the right to silence as well, the magistrate judge concluded that because Rodriguez's purported invocation of the right to silence was ambiguous, it was insufficient to cut off further questioning.

The district court adopted the magistrate judge's report in full. Rodriguez entered a conditional guilty plea to all counts. The district court accepted the guilty plea, and sentenced Rodriguez to 46 months as to each count, to be served concurrently. Rodriguez appealed.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to hear this case under 28 U.S.C. § 1291.

Before a defendant's self-incriminating statements may be admitted into evidence, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 475 (1966).

This court reviews a trial court's legal conclusions on *Miranda* waivers de novo, and findings of fact underlying those conclusions for clear error. *United States v. Narvaez-Gomez*, 489 F.3d 970, 973 (9th Cir. 2007); *United States v. Becerra-Garcia*, 397 F.3d 1167, 1172 (9th Cir. 2005). In this context, we review the district court's factual findings concerning the words a defendant used to invoke his *Miranda* rights for clear error and whether the words actually invoked those rights de novo. *See United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir. 2005).

## III.   DISCUSSION

Rodriguez argues first that his statement to Gunderson, "I'm good for tonight," was an unambiguous invocation of his

right to silence. He next argues that, to the extent his state-ment was ambiguous, Gunderson was under a duty to further clarify its meaning before he or any other Ranger proceeded with interrogation. We address each argument in turn.

## A.

At the suppression hearing, Gunderson offered the follow-ing uncontroverted testimony concerning the *Miranda* warn-ing he gave Rodriguez:

> Q. Now, when you were reading Mr. Rodriguez his *Miranda* rights you of course told him that he had the right to remain silent?
>
> A. Correct.
>
> Q. You told him that anything that he said could and would be used against him in a court of law?
>
> A. Correct.
>
> Q. You told him that if he could not afford to hire an attorney one would be appointed to represent him before any questioning, if he wished one?
>
> A. Correct.
>
> Q. You also told him that if he decided to answer any questions now, without having counsel present, he could also choose to stop answering at any time?
>
> A. Correct.
>
> Q. And you told him that he could request counsel at any time during questioning?

A. Correct.

Q. And after saying that you asked him whether understanding those rights, if he wished to speak to you?

A. Correct.

Q. And his answer to that was "I'm good for tonight?"

A. Correct.

The magistrate judge stated that this response was "definitionally ambiguous," as it could have indicated either that Rodriguez was willing to talk, or that he was invoking his right to silence. Rodriguez disagrees, and contends that his statement "was neither ambiguous nor equivocal" because he "did not use words of an equivocal nature, such as 'maybe' or 'might.' " It is true that his statement was certainly not "equivocal" in the sense of evincing indecision or uncertainty. *Compare Davis*, 512 U.S. at 459 (describing the statement "Maybe I should talk to a lawyer" as "an ambiguous or equivocal reference to an attorney"), *with Anderson v. Terhune*, No. 04-17237, 2008 WL 399199 at *5 (9th Cir. Feb. 15, 2007) (en banc) (stating that suspect "did not equivocate in his invocation" because he did not "us[e] words such as 'maybe' or 'might' or 'I think.' "). Rodriguez claims, however, that his statement was also not ambiguous, that it was open to only one valid interpretation:[3] that he was asserting his right to remain silent.

[1] We disagree. The phrase "I'm good," in the context of

---

[3]"Ambiguity means 'admitting more than one interpretation or reference' or 'having a double meaning or reference.' " *Anderson*, 2008 WL 399199 at *5 (quoting The New Shorter Oxford English Dictionary (1993)).

a *Miranda* waiver, admits of different interpretations. From Gunderson's testimony, it appears that the phrase "I'm good for tonight" was in direct response to an inquiry concerning whether Rodriguez wanted to talk to Gunderson. The phrase might have meant, "I'm good [to talk] for tonight." Alternatively, the phrase "I'm good" can indicate, more idiomatically, that the speaker is declining or refusing an offer—roughly equivalent to the phrase "no thanks." In this case, the phrase could be interpreted as declining Gunderson's offer to talk with him. Conversely, the phrase, given at the end of a *Miranda* warning which acts, in effect, as an offer of the rights to counsel and silence, could indicate that Rodriguez was declining that offer and waiving those rights. We therefore hold the statement to be, at best, an ambiguous invocation of the right to silence.[4]

## B.

**[2]** Having determined that the statement was not an unambiguous invocation of the right to silence, we must next determine what Gunderson ought to have done in response. Prior to 1994, this circuit, along with a number of other jurisdictions, adopted a broad "clarification" rule: in the face of an ambiguous or equivocal assertion of *Miranda* rights, made at any time during interrogation, interrogating officers were required to clarify the statement before continuing with interrogation. *See Nelson v. McCarthy,* 637 F.2d 1291, 1296 (9th Cir. 1981) ("[W]here there has been an equivocal assertion of a constitutional right [to silence], the attending officer can ask

---

[4]At the suppression hearing, Rodriguez attempted to introduce into evidence the results of a survey, posing a hypothetical scenario based on these facts, in which 53% of respondents in Clark County, Nevada believed that the words "I'm good for tonight" constituted an invocation of the right to remain silent. Even if we accept, *arguendo*, that such survey data was probative evidence of the meaning of the phrase, this particular survey, showing only the barest of majorities agreeing on an interpretation of the phrase, does not convince us that the phrase *unambiguously* invokes the right to silence.

questions to clarify the defendant's wishes, but then only so long as he does not continue a general interrogation."); *see also United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir. 1985); *United States v. Mendoza-Cecelia,* 963 F.2d 1467, 1472 (11th Cir. 1992); *United States v. Cherry*, 733 F.2d 1124, 1130 (5th Cir. 1984). The government argues that this clarification rule has been completely superseded by *Davis v. United States*, which expressly rejected a clarification rule on the facts of the case before it, 512 U.S. at 461, and that, because Rodriguez's statement was not an "unambiguous or unequivocal" invocation of his *Miranda* rights, *id.* at 462, we should deem them to have been waived. We disagree, because the facts, holding, and reasoning of *Davis* are distinguishable from those in this case.

In *Davis*, the defendant, whom the Naval Investigative Service suspected of murder, was issued his *Miranda* warning and expressly "waived his rights to remain silent and to counsel, both orally and in writing" upon being taken into interrogation. 512 U.S. at 455. "About an hour and a half into the interview," after, it seems, he had begun to suspect that the interrogation was not going his way, he said to his interrogators, "Maybe I should talk to a lawyer."[5] *Id.* The investigating agents asked whether this meant that he was asking for a lawyer, to which the suspect replied, "No, I don't want a lawyer." *Id.* Interrogation then continued. The five-member Court majority held that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer

---

[5]Rodriguez also argues that the holding of *Davis* does not apply to his case because *Davis* concerned an invocation of the right to counsel, whereas Rodriguez's statement concerned his right to silence. Because we decide this case on other grounds, we decline to address this question. We note, however, that in four other cases this circuit has declined to address this question. *See Anderson*, 2008 WL 399199 at *4 n.3; *Arnold v. Runnells*, 421 F.3d 859, 866 n.8 (9th Cir. 2005); *United States v. Soliz*, 129 F.3d 499, 504 n.3 (9th Cir. 1997), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) (en banc); *Evans v. Demosthenes*, 98 F.3d 1174, 1176 (9th Cir. 1996).

in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459. It further expressly "decline[d] to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 461-62.

**[3]** The holding of *Davis*, however, addressed itself narrowly to the facts of the case: "We therefore hold that, *after a knowing and voluntary waiver of the* Miranda *rights*, law enforcement officers may *continue* questioning until and unless the suspect clearly requests an attorney." *Id.* at 461 (emphasis added). The text of the opinion is also narrowly drawn: it asks whether "*further* questioning" is permitted upon an equivocal or ambiguous invocation of the right to counsel, *id.* at 454, 458 (emphasis added), or, rather, whether questioning must "cease," *id.* at 456, 459, 460 ("cessation"), 461, 462, or "stop," *id.* at 459, 462—all implying that legal questioning, following a valid initial *Miranda* waiver, was already occurring. Indeed, prior compliance with *Miranda* is critical to the logic of the Supreme Court's holding:

> [T]he primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves. "[F]ull comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process." *A suspect who knowingly and voluntarily waives his right to counsel* after having that right explained to him has indicated his willingness to deal with the police unassisted. Although *Edwards* provides an additional protection—if a suspect *subsequently* requests an attorney, questioning must cease—it is one that must be affirmatively invoked by the suspect.

*Id.* at 460-61 (citations omitted, emphasis added).

**[4]** In other words, the "clear statement" rule of *Davis* addresses only the scope of invocations of *Miranda* rights in a *post-waiver* context. It is well settled that "[i]nvocation and waiver [of *Miranda* rights] are entirely distinct inquiries, and the two must not be blurred by merging them together." *Smith v. Illinois*, 469 U.S. 91, 98 (1984). *Davis* addressed what the suspect must do to *restore* his *Miranda* rights after having already knowingly and voluntarily waived them. It did not address what the police must obtain, in the *initial waiver* context, to begin questioning.[6]

---

[6]In holding that the "unambiguous or unequivocal request" rule of *Davis* is limited to the post-waiver scenario, we note that the majority of state supreme courts to consider the issue have reached the same conclusion. *See State v. Tuttle*, 650 N.W.2d 20, 28 (S.D. 2002) ("*Davis*, in sum, applies to an equivocal postwaiver invocation of rights. For an initial waiver, however, the State still bears 'a heavy burden to demonstrate that the defendant knowingly and intelligently waived' *Miranda* rights." (quoting *Miranda*, 384 U.S. at 475)); *State v. Holloway*, 760 A.2d 223, 228 (Me. 2000) (declining "to require an unambiguous *invocation* of the right to remain silent and the right to an attorney in the absence of a prior waiver" ); *State v. Leyva*, 951 P.2d 738, 743 (Utah 1997) ("The Court in *Davis* made clear that its holding applied only to a suspect's attempt to reinvoke his Miranda rights '*after* a knowing and voluntary waiver' of the same. . . . Plainly, [it] did not intend its holding to extend to prewaiver scenarios, and we see no reason to so extend it." (quoting *Davis*, 512 U.S. at 461)). A number of state intermediate courts of appeal have likewise adopted this position. *See, e.g.*, *Noyakuk v. State*, 127 P.3d 856, 868-69 (Alaska Ct. App. 2006); *State v. Collins*, 937 So.2d 86, 93 (Ala. Crim. App. 2005); *Freeman v. State*, 857 A.2d 557, 573 (Md. Ct. Spec. App. 2004).

We acknowledge that a number of decisions have applied the *Davis* rule in a pre-waiver or initial waiver context, *see, e.g.*, *United States v. Brown*, 287 F.3d 965, 972 (10th Cir. 2002); *United States v. Muhammad*, 120 F.3d 688, 697-98 (7th Cir. 1997); *Monroe v. State*, 126 P.3d 97, 101 (Wyo. 2006). However, we are aware of only one published opinion, from any jurisdiction, to do so after expressly considering the initial waiver/post-waiver distinction. *See In re Christopher K.*, 841 N.E.2d 945, 964-65 (Ill. 2005) (holding that, while "the United States Supreme Court has left open the issue of whether the objective test applies in a prewaiver setting," it would nonetheless apply the "clear statement" rule of *Davis* to an initial waiver inquiry where "the suspect makes a reference to counsel immediately after he has been advised of his *Miranda* rights.").

The existence of a prior waiver explains how *Davis* can be reconciled with the Supreme Court's historic presumption against finding waiver of constitutional rights. *Miranda* itself, in describing the government's burden to prove waiver as "heavy," stated that "[t]his Court has always set high standards of proof for the waiver of constitutional rights, and we reassert these standards as applied to in custody interrogation." 384 U.S. at 475 (citation omitted). Prior to the *Miranda* warning and waiver, the police have no right to question the suspect. *Id.* at 471 (describing the warning as "an absolute prerequisite to interrogation"). Once that "heavy burden" has been met, however, *Davis* indicated that the benefits of *Miranda* have been realized: the suspect has understood his rights and has freely chosen to proceed. It is then the police's right to interrogate the suspect, and the suspect, in effect, who bears the "burden" of cutting off questioning by unambiguously retracting the clear waiver he has already given.[7]

---

[7]The importance of prior waiver accords with the practical consequences that the *Davis* majority fears it would bring about if it were to decide that ambiguous statements might trigger *Edwards* duties:

> The *Edwards* rule—questioning must cease if the suspect asks for a lawyer—provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong.

*Davis*, 512 U.S. at 461. Such a concern is explicable only in the context of an *ongoing* interrogation, which would be interrupted by the need to clarify ambiguous remarks. By contrast, the *Miranda* warning, and the corresponding waiver requested at its end, is to be given as "an absolute prerequisite to interrogation." *Miranda*, 384 U.S. at 471, and therefore is already a bright-line rule that interrupts nothing. If it is not unreasonable to ask a police officer to administer the warning, it is also not unreasonable to ask him to get an unequivocal waiver before commencing general interrogation.

**[5]** *Davis*, therefore, abrogated our clarification rule only to the extent that our rule required clarification of invocations made *post-waiver*. *Nelson v. McCarthy*, however, expressly contemplated both pre- and post-waiver assertions of *Miranda* rights. 637 F.2d at 1296-97 (recounting the facts of *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir. 1978) (en banc), an initial waiver case). To the extent *Nelson* requires pre-waiver clarification of a suspect's wishes concerning his *Miranda* rights, it has not been superseded by *Davis*, and remains binding precedent. Prior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation. In this case, the government cannot meet its "heavy burden" of proving an initial knowing and intelligent waiver of *Miranda* with an ambiguous or equivocal reference to *Miranda* rights.

**[6]** We do not hold that all waivers of *Miranda* rights must be *express*: "a suspect may impliedly waive the rights by answering an officer's questions after receiving *Miranda* warnings." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127, *amended*, 416 F.3d 939 (9th Cir. 2005). A suspect who blurts out a confession after receiving and understanding a *Miranda* warning has unambiguously waived his rights, albeit impliedly. In this case, however, we cannot find implied waiver. Rodriguez's statement, "I'm good for tonight," however ambiguous, was unquestionably a response to Gunderson's *Miranda* warning and offer to begin interrogation. Whatever it means, his "statement either is such an assertion [of *Miranda* rights] or it is not." *Smith v. Illinois*, 469 U.S. at 97-98 (quotation marks and citation omitted). The interrogating officers were under a duty to clarify what Rodriguez meant—and if he meant he didn't want to talk, that right should have been "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). Indeed, an inference of implied waiver would be especially inappropriate here, where the interrogating officer, rather than clarifying what "I'm good for tonight" meant, or even beginning questioning immedi-

ately, instead left Rodriguez alone and allowed another officer to begin interrogation a short time later. "We understand the phrase 'scrupulously honor' to have practical meaning," *Anderson*, 2008 WL 399199 at *9, and "a valid waiver will not be presumed . . . simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475.

## IV.  CONCLUSION

**[7]** We hold that the clarification rule of *Nelson v. McCarthy* survives *Davis v. United States*, except in situations where the suspect under interrogation has already given an unequivocal and unambiguous waiver of his *Miranda* rights. Because Rodriguez's statement in response to the *Miranda* warning was ambiguous, and because his interrogator failed to clarify Rodriguez's wishes with respect to his *Miranda* warnings, the district court erred in admitting his subsequent incriminating statements into evidence.

The decision of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.