B. FLETCHER, Circuit Judge,
dissenting:
I respectfully dissent.
The Supreme Court has made clear that our review of a petition for a writ of habeas corpus filed post-AEDPA is significantly limited by 28 U.S.C. § 2254(d), see Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Such review, however, is not toothless. Harrington neither strips this court of the power to review state court decisions grounded in federal constitutional law, nor does it require that we “rubber stamp” such dispositions. Indeed, the Court has expressly acknowledged that AEDPA’s “standard is demanding but not insatiable” and “‘deference does not by definition preclude relief.’ ” Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (alteration omitted) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). A federal court’s role *1293 in reviewing writs of habeas corpus implicating the fundamental rights of American citizens is a long-standing and crucially important one, and rarely has there been a case in which our obligation in discharging that role was more clear than in this one. When the government “take[s] a butcher knife to Miranda ... a federal court can’t sit idly by.” Doody v. Ryan, 649 F.3d 986, 1028 (9th Cir.2011) (Kozinski, C.J., concurring).
I.
Sessoms, a naive and relatively uneducated 19-year-old boy, went, accompanied by his father, to turn himself in to the police for a serious crime. Sessoms’s father left his son with one clear admonition: he must ask for a lawyer before talking to the police. At the police station, Sessoms was visited by two Sacramento city homicide detectives. Before any meaningful exchange took place, Sessoms followed his father’s instructions and asked the detectives for an attorney. He first asked, “There wouldn’t be any possible way that I could have a — a lawyer present while we do this?” As Detective Woods paused and stammered, Sessoms immediately reiterated his desire for counsel, explaining “that’s what my dad asked me to ask you guys— uh, give me a lawyer.” After requesting a lawyer with these two statements, Sessoms explained his concern that his words might be misrepresented if he did not have an attorney present.
Instead of complying with Sessoms’s clear request for a lawyer, Detective Woods, evidently realizing that such a request had been made, dissuaded Sessoms from exercising his right. The detective reassured Sessoms that counsel was unnecessary because he was an “upfront and honest” guy who would not try to play any “switch games” with Sessoms, and because he would record the conversation.[1] After starting the recording device, Detective Woods informed Sessoms that two other suspects had “waived [their] rights” and given statements incriminating Sessoms, but that he understood that there are “two sides to every story.” The detective advised that a lawyer would probably prevent Sessoms from making a statement and being able to tell the police his “version of it.”[2] He then refused Sessoms’s request to call his father before speaking to him, telling Sessoms that he was an “adult.” After undermining the instructions that Sessoms had received from his father and suggesting that it was in his best interest not to obtain counsel in response to his clear request to do so, the detective, for the first time, informed Sessoms of his Miranda rights. Then, without being allowed to consult with his father, Sessoms talked.
The state court’s decision not to suppress the confession obtained under these circumstances does not withstand AEDPA review. I disagree with the majority’s analysis of whether the state court’s conclusion that Sessoms did not invoke his right to counsel was unreasonable. Sessoms’s statements constitute an invocation of the right to counsel under Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the applicable *1294 precedent, and Davis v. United States, 512 U.S. 452, 459-60, 114 S.Ct. 2850, 129 L.Ed.2d 362 (1994), the case applied by the state court. Because the decision of the state court “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” Sessoms is entitled to habeas relief. 28 U.S.C. § 2254(d).
II.
I rest my dissent on the state court’s indefensible conclusion that Sessoms’s statements did not constitute an invocation of the right to counsel. His two statements, which together constitute an unambiguous request for a lawyer, meet both the notably lenient Edwards standard and the post-waiver standard set forth in Davis. The contrary holding, endorsed by the majority, is an unreasonable application of federal law. It eviscerates the Fifth Amendment and the meaningful protections that Miranda affords.
A.
The holding in Edwards v. Arizona makes clear the unreasonableness of the state court decision. As required by that case, Sessoms “expressed his desire” for the assistance of counsel, and was therefore “not subject to further interrogation by the authorities until counsel [had] been made available to him.” Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880. “Invocation of the Miranda right to counsel ‘requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.’ ” Davis, 512 U.S. at 459, 114 S.Ct. 2350 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)); see also Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that, if a suspect “indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking[,] there can be no questioning”). These decisions, which constitute clearly established Miranda law, make clear that the standard for invocation of the right to counsel is not a rigorous one. A suspect’s words are considered ambiguous only if “ordinary people would understand them” to be so. Connecticut v. Barrett, 479 U.S. 523, 529, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). Notably, none of these cases sets forth a standard that even remotely resembles a “magic words” test. Edwards, Miranda, and McNeil instruct the court to determine whether an accused’s statements, under a reasonable construction, convey the desire to have counsel present; that is exactly what Sessoms’s statements do. Despite the attempts of the state court and the majority opinion to dissect Sessoms’s statements to find any other possible meaning to his words, no ordinary person would interpret his words as anything other than a request for a lawyer. In fact, the detective plainly understood that Sessoms had expressed a desire for counsel, which is precisely why he responded by persuading him that having a lawyer was a bad idea.[3]
Indeed, Sessoms’s statements also meet Davis’s post-waiver requirement that a request for counsel be “unambiguous.”[4] *1295 The Davis standard requires neither grammatical correctness nor fluid phrasing. Davis acknowledges that “a suspect need not speak with the discrimination of an Oxford don,” 512 U.S. at 459, 114 S.Ct. 2350, and, like its predecessors, makes no mention of any particular “magic words.” Rather, Davis requires only sufficient clarity so that “a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Id.
Unquestionably, a reasonable police officer would, as the detective did here, understand Sessoms’s statements to be a request for counsel. He first politely requested to confer with counsel — “There wouldn’t be any possible way that I could have a — a lawyer present while we do this?” — and then immediately clarified and reinforced his intention by stating “give me a lawyer.” Neither Sessoms’s words nor his intention are in any way ambiguous. Indeed, the officer’s telling response to Sessoms’s request bolsters the conclusion that it meets the Davis standard. Upon being presented with the request, Detective Woods stammered and then launched into an explanation of why a lawyer was neither necessary nor advisable. He did this because he understood that a lawyer is exactly what Sessoms wanted.[5] When Sessoms asked the detective whether it would be possible for him to have an attorney present during questioning, the only correct response under Miranda was “yes.” Cf. United States v. Younger, 398 F.3d 1179, 1184 (9th Cir.2005) (when a suspect asked “But, excuse me, if I am right, I can have a lawyer present through all this, right?,” the officers immediately responded “Yeah,” and then read him his Miranda rights).
B.
In analyzing why habeas relief should be granted, I do not simply rest on the conclusion that the state court reached the incorrect result. I readily accept the majority’s repeated challenge to demonstrate “that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 131 S.Ct. at 786-87. “Fairminded” disagreement is disagreement that is “un *1296 prejudiced, just, judicial, [and] honest.” Webster’s Third New International Dictionary 816 (2002). The state court’s conclusion, and the majority’s endorsement of it, are entirely without justification, and therefore fail to withstand AEDPA review.
First, both the state court and the majority attempt to obscure the clear nature of Sessoms’s request by breaking apart his successive statements and attacking each one individually. This analysis, however, ignores the fact that, as reflected in the transcript and the video, these statements work together as an expression of one complete thought. Sessoms asked “There wouldn’t be any possible way that I could have a — a lawyer present while we do this?” and then immediately explained “that’s what my dad asked me to ask you guys — uh, give me a lawyer.” (emphasis added). “Give me a lawyer,” therefore, refers back to and makes absolutely clear what was expressed in the first, more polite, inquiry. When the successive requests are read together and in light of one another, there remains no reasonable argument to support the state court’s conclusion. As spoken, Sessoms’s words are subject to only one rational interpretation — he was asking to consult with a lawyer.
The state court entirely failed to consider what the statements mean when read together, or precisely how Sessoms conveyed them. This failure is fatal to the state court’s application of Davis and Edwards, that is, to its assessment of how a reasonable police officer would have understood Sessoms’s statements, because the detectives did in fact hear both statements, one immediately following the other. Nothing in Miranda, Edwards, Davis, or any other case can be read to support the contention that an invocation of the right to counsel must be made in a single sentence, rather than in two successive statements. The state court failed to appreciate the clarity of the request in its entirety, instead breaking it apart and unreasonably concluding that the pieces are inadequate.
If this failure is not itself reason enough to grant relief, the attempts to undermine Sessoms’s individual statements are also without merit. As to his first statement, “There wouldn’t be any possible way that I could have a — a lawyer present while we do this?”, the contention that Sessoms was inquiring only as to whether he could request counsel is nothing more than an irrelevant lesson in grammar. Both the state court and the majority opinion pay mere lip service to the rule that a criminal defendant need not speak with “the discrimination of an Oxford don” and then proceed to attack the grammatical structure of Sessoms’s sentence to conclude that he was asking a clarifying question rather than invoking his right.[6] Though *1297 he may, understandably, have phrased the request timidly, Sessoms nonetheless made clear to any reasonable listener his desire to have counsel present during his conversation with the police.
Apparently, the state court simply thought that Sessoms’s wording was too polite. Because he inquired whether he could ask for a lawyer, rather than demanding one, the court concluded that he is not entitled to his Fifth Amendment right.[7] If this or any other court demands such specificity and precision in invoking the right to counsel, particularly before it has been knowingly waived, the right will operate for only those educated individuals who have at their disposal the vocabulary and self-assuredness of my colleagues in the majority. This is precisely the standard for invocation that Davis expressly forbids. 512 U.S. at 459, 114 S.Ct. 2350. The state court’s error, therefore, was “well understood and comprehended in existing law.” Richter, 131 S.Ct. at 786-87.
The second statement made by Sessoms was “that’s what my dad asked me to ask you guys — uh, give me a lawyer.” As explained above, this statement is plainly a clarification of the request made in Sessoms’s first inquiry, i.e. to consult with counsel. The assertion that, in so stating, Sessoms was conveying the will of his father rather than his own is simply incorrect when the statement is read with his first inquiry. Furthermore, even in isolating Sessoms’s second statement from his first, the state court was still faced with the magician’s task of convincing us that “give me a lawyer” does not really mean “give me a lawyer.” The court failed, however, to pull the rabbit out of its hat.
The situation presented is straightforward. A 19-year-old, upon the advice and with the assistance of his father, turned himself in to the police. His father instructed that, prior to talking to the police, he should ask for counsel. In executing these instructions to the best of his ability, the young man told the police that his request was on the advice of his father. This fact in no way affects the validity of the underlying request. Indeed, Sessoms’s preface about his father’s advice, if anything, reinforced and clarified that he was requesting counsel pursuant to the instructions he had received. See Smith v. Illinois, 469 U.S. 91, 96-97, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (reversing a state court decision that failed to point to anything “inherent in the nature of [the *1298 suspect’s] actual request for counsel that reasonably would have suggested equivocation” other than the use of “uh”, and noting that the suspect’s assertions that “she” warned him that the police would “railroad” him and advised him to get a lawyer before submitting to interrogation reinforced the clarity of the suspect’s invocation). The state court’s reasoning cannot be squared with clearly established law on this very issue.
Simply stated, when Sessoms said “give me a lawyer” he meant give me a lawyer, regardless of whether the request was on the advice of his father, his priest, or his law school professor. If any words could invoke the right to counsel guaranteed by the Fifth Amendment, these are they— there is no room for disagreement on this point. At the moment Sessoms uttered these words, the police should have ceased questioning and counsel should have been provided.[8]
The majority’s affirmation of what it calls a “harsh” application of the law is an attempt to justify the state court’s indefensible conclusion that this young man did not request counsel before he was read his Miranda rights. The suggestion that Sessoms’s “inflection, body language, and manner” support the state court’s conclusion, despite what the transcript reflects, is perplexing. As I review the video, Sessoms’s body language, demeanor, and tone of voice do nothing to alter the clear thrust of his language. If anything, his posture and the position of his arms indicate that perhaps he feels scared — or just cold. It is as if the majority is curiously attempting to resurrect the once-familiar maxim that “your words said no but your body language said yes.”
Habeas relief should be granted not merely because the state court’s application of Miranda law is incorrect. Rather, relief should be granted because the state court’s reasoning is contrary to the Supreme Court’s clear mandate that when a suspect “expresses his desire” to have counsel present, questioning must cease. See Edwards, 451 U.S. at 484-85,101 S.Ct. 1880. Its reasoning cannot be reconciled with the instruction that a suspect need not speak with the “discrimination of an Oxford don” when making his request. See Davis, 512 U.S. at 459, 114 S.Ct. 2350. Its reasoning is directly at odds with the Court’s direction that an expression of reliance on the advice of a third party does not create ambiguity, but rather reinforces the clarity of an invocation. See Smith, 469 U.S. at 96 n. 4, 105 S.Ct. 490. And its conclusion is directly opposed to the Fifth Amendment itself, because an irrational holding that “give me a lawyer” does not mean give me a lawyer eviscerates the right to counsel completely.
III.
I also disagree with the state court’s decision to apply the standard announced in Davis to the facts of this case. A state-court decision is an unreasonable application of federal law under AEDPA when it “unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply.” Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[9] The *1299 state court’s application of Davis to the pre-waiver context is just such an unreasonable extension.
Davis held that, after a suspect has chosen to waive his right to counsel, his subsequent request for counsel must be unambiguous. 512 U.S. at 459, 114 S.Ct. 2350. The Court was not silent on the issue of whether its holding should apply in the pre-waiver context. The articulated Davis holding is as follows: “[A ]fter a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.” Id. (emphasis added). The language and analysis of Davis itself, therefore, compels the conclusion that its application is inappropriate in the pre-waiver context. It addresses only what a suspect must do to restore the right to counsel after it has been knowingly disavowed, not the degree of clarity with which a suspect must invoke the right in the first instance. Indeed, it is well settled that “[invocation and waiver [of Miranda rights] are entirely distinct inquiries, and the two must not be blurred by merging them together.” Smith, 469 U.S. at 98, 105 S.Ct. 490. In simply reciting and applying the Davis test, the state court ignored the reasoning and underlying facts that justified the rigor of Davis’s approach. The manner in which the state court applied Davis runs directly afoul of both Smith and Davis.[10]
Because Sessoms’s statements nonetheless satisfy the Davis requirement for a post-waiver request, there is no need to decide the question of whether Davis should have applied at all. Therefore, though I believe the issue worth noting, I do not rest my dissent on the state court’s decision to apply Davis to the pre-waiver context.
*1300 IV.
Though review under AEDPA is limited, it is not, as the majority would have it, a nullity. “[Wjhere, as here, a state court doesn’t act reasonably, deference comes to an end.” Doody, 649 F.3d at 1028 (Kozinski, C.J., concurring). Edwards and Miranda establish that, once a suspect has indicated a desire to consult with counsel, all questioning must cease. Sessoms’s statements meet this standard, which is not a rigorous one, as they do the post-waiver standard set out in Davis. The state court and majority’s empty attacks on Sessoms’s grammar, tone, and body language create unreasonable and grossly prejudicial barriers to the invocation of the right to an attorney that contravene clearly established law.
Moreover, the majority’s holding creates particular injustice for the poor and less educated, who often regard law enforcement with uncertainty or timidity but for whom counsel and representation are most critical. By waving its wand and declaring the words “give me a lawyer” insufficient to request a lawyer, the state court, with the help of the majority, has made Miranda rights disappear. Sessoms’s habeas petition should be granted.

. Detective Woods’s immediate response to Sessoms's two statements was "What — what we’re going to go is, um — I have one philosophy and that’s, uh, be right up-front and be honest ... and not ... try to hide anything from you, okay?” Sessoms then expressed the concerns that motivated his desire for counsel, to which Detective Woods responded, "No, we’re not playing no switch games or nothing else.”

. This “advice” was given to Sessoms before the detective informed him that he had a right to an attorney.

. As the majority points out, the facts of this case are unique in that "individuals who desire counsel do not normally thereafter waive their Miranda right to counsel.” This unlikely scenario presents itself here precisely because, after Sessoms expressed his desire for counsel, the request was ignored and he was instead persuaded to forgo this right.

. The suspect’s statement in Davis that was insufficient to restore the right to counsel after it had been waived was "Maybe I should talk *1295 to a lawyer.” 512 U.S. at 462, 114 S.Ct. 2350. This statement, reflecting a measure of equivocation on the part of the speaker, is entirely different in kind from Sessoms’s prewaiver inquiry as to whether he could have a lawyer, followed by the explanatory words “give me a lawyer.”

. Notably, in addition to his failure to honor Sessoms’s clearly stated request for counsel, the detective’s subsequent attempt to dissuade Sessoms from consulting a lawyer raises a question as to whether Sessoms was adequately advised of his Miranda rights. In a recent en banc decision, Doody v. Ryan, we emphasized that Miranda requires a defendant be informed of his rights in a "clear and understandable” manner. Doody v. Ryan, 649 F.3d 986, 1002-04 (9th Cir.2011). As Chief Judge Kozinski notes in his concurrence, ”[i]t's not too much to ask that police recite [Miranda warnings] as prescribed by the Supreme Court, and not ... obscure their meaning and undermine their effect.” Id. at 1029 (Kozinski, C.J., concurring).
As in Doody, the detective in this case deliberately downplayed the importance of the right to counsel in persuading Sessoms that a lawyer was not necessary. Clearly, the primary issue in this case is the adequacy of Sessoms’s initial invocation, rather than the adequacy of the detective's subsequent advisement; Sessoms does not challenge the propriety of the warnings. Nonetheless, that the detectives actively undermined Sessoms’s understanding of his right only further indicates that their failure to provide him with counsel upon his initial request was deliberate, strategic, and unlawful.

. This reasoning runs directly afoul of Alvarez v. Gomez, 185 F.3d 995, 998 (9th Cir.1999), where we construed the suspect's statements ("[c]an I get an attorney right now, man?”, "[y]ou can have an attorney right now?”, and "[w]ell like right now you got one?”) to be unambiguous requests for counsel rather than clarifying questions regarding the right to counsel. Accord Clark v. Murphy, 331 F.3d 1062, 1070-72 (9th Cir.2003) (holding that the state court’s conclusion that a suspect did not unambiguously request counsel was not unreasonable when, during a post-Miranda interview, the suspect stated, "I think I would like to talk to a lawyer,” after which the police stopped questioning him, left the room, and did not resume questioning until the suspect explicitly said he did not want a lawyer and wanted to continue talking). Although Alvarez does not serve as "clearly established law” for purposes of AEDPA, it remains the law of this circuit and serves as persuasive authority in evaluating on habeas review the reasonableness of the state court’s application of federal law. See Mejia v. Garcia, 534 F.3d 1036, 1042 (9th Cir.2008); Clark, 331 F.3d at 1071 (identifying, under AEDPA review, Alva *1297 rez and other circuit cases as possible persuasive authority).
The majority attempts to undermine the relevance of Alvarez by stating in a footnote that "[a]t best, circuit precedent may serve as persuasive authority,” and then citing Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1410-11, 179 L.Ed.2d 557 (2011) with a "But see” signal. Pinholster reasons only that the Supreme Court cases that the lower court had relied upon offered limited guidance as direct authority because they lacked the "doubly deferential” standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and AEDPA; it neither addresses nor undermines the established principle that this circuit’s law, whether decided under AEDPA or not, serves as persuasive authority as to the reasonableness of a state court’s application of existing Supreme Court precedent. Pinholster, 131 S.Ct. at 1410-11; see, e.g., Kessee v. Mendoza-Powers, 574 F.3d 675, 677-78 (9th Cir.2009); Clark, 331 F.3d at 1071-72; Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.2000); MacFarlane v. Walter, 179 F.3d 1131, 1138-39 (9th Cir. 1999).

. To reiterate, Sessoms went on to explain his request when he immediately said, "that’s what my dad asked me to ask you guys — uh, give me a lawyer." (emphasis added). The rationale of the state court and the majority is therefore meritless, as Sessoms did in fact make a more forceful request for counsel that referred back to and explained his initial polite inquiry.

. That Sessoms continued to respond to the detectives’ questions after requesting counsel has no bearing upon the validity of his initial invocation. "Under Miranda and Edwards ... an accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel.” Smith, 469 U.S. at 92, 105 S.Ct. 490.

. Williams, therefore, expressly acknowledges that AEDPA allows us to evaluate whether the state court has unreasonably extended Supreme Court precedent to a new context. *1299 This disposes of the majority’s suggestion that, merely because the Supreme Court has never held against the application of a particular legal principle to a specific factual circumstance, AEDPA review is foreclosed. Williams leaves open only the question of whether an unreasonable extension of Supreme Court law falls under the "unreasonable application” or the "contrary to” clause of § 2254(d)(1), noting that the analysis can, depending on the case, be treated under both. 529 U.S. at 408, 120 S.Ct. 1495. Regardless, Williams's clear instruction that a state court may not unreasonably extend Supreme Court precedent to a new context where it should not apply remains good law.

. This circuit has clearly held that Davis’s test is limited to the post-waiver context. In United States v. Rodriguez, 518 F.3d 1072, 1078-79 (9th Cir.2008), we examined the language in Davis and concluded that the "clear statement” rule in Davis “addresses only the scope of invocations of Miranda rights in a post-waiver context.” We further explained that “Davis addressed what the suspect must do to restore his Miranda rights after having already knowingly and voluntarily waived them. It did not address what the police must obtain, in the initial waiver context, to begin questioning.” Id. at 1079. Indeed, ”[t]he existence of a prior waiver explains how Davis can be reconciled with the Supreme Court’s historic presumption against finding waiver of constitutional rights.” Id. We have explicitly recognized, therefore, that Davis does depart in some measure from precedent, and is therefore appropriately applied only in a limited context.
The state court, nevertheless, applied Davis to the pre-waiver context. Although I fully recognize that the law of this circuit does not bind state courts, I reiterate the well-settled principle that our decisions may be used as persuasive authority to determine if a state court's decision is an "unreasonable application” of clearly established federal law, or whether the law is "clearly established.” Mejia, 534 F.3d at 1042; Duhaime, 200 F.3d at 600-01. Rodriguez fully explains why extending Davis to the post-waiver context is unreasonable, and it is consistent with the decisions of other jurisdictions. 518 F.3d at 1079 n. 6. Rodriguez is not, as the majority contends, "immaterial,” but rather serves as relevant, persuasive authority on the issue of how Davis reasonably can be applied.