NOT FOR PUBLICATION

FILED

**UNITED STATES COURT OF APPEALS**

DEC 27 2024

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MOHAMMAD JAWAD ANSARI, AKA
Mohammad J. Ansari, AKA Eli,

Defendant - Appellant.

No. 23-2703

D.C. No.
2:20-cr-00449-FLA-1

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted December 5, 2024
Pasadena, California

Before: BEA, OWENS, and KOH, Circuit Judges.
Concurrence by Judge KOH.

Mohammad Jawad Ansari appeals from his conviction of abusive sexual

contact in violation of 18 U.S.C. § 2244(b) after a jury found he knowingly and

intentionally groped a sleeping woman on an airplane. Ansari challenges the

district court's admission of his post-incident interview and certain lay opinion

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

testimony, the exclusion of expert testimony, and the impartiality of his jury. As the parties are familiar with the facts, we do not recount them here. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. First, Ansari appeals from the district court's denial of his motion to suppress his post-incident statements to federal agents as involuntary. We review the district court's voluntariness determination de novo. *See United States v. Preston*, 751 F.3d 1008, 1020 (9th Cir. 2014) (en banc). To assess a statement's voluntariness, we consider the "totality of all the surrounding circumstances," including "the characteristics of the accused and the details of the interrogation." *Id*. at 1016 (citation and emphasis omitted).

At the time of the interview, Ansari was a forty-seven-year-old business consultant with a college education. The interview, conducted by three plain-clothes agents with concealed weapons in a public airport terminal, lasted approximately two and a half hours. The agents clearly advised him of his rights and twice provided him with water. While the agents did tell Ansari that his version of events, if true, could land him on a no-fly list, these statements were not so coercive that his "will was overborne." *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (en banc) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). Thus, under the totality of the circumstances, we agree Ansari's post-incident statements were voluntary.

2. Alternatively, Ansari argues that, if his statements were voluntary, the district court erred by not admitting the entire interview under the Rule of Completeness. *See* Fed. R. Evid. 106. Instead, the district court allowed Ansari to introduce excerpts, in addition to those offered by the government, that allowed him to challenge the reliability of his statements. We review this approach for abuse of discretion. *See United States v. Lopez*, 4 F.4th 706, 717 (9th Cir. 2021). Given the interview's length and redundancy, we hold the district court was within its discretion to admit only the excerpts offered by both sides.

3. Ansari also raises two challenges to the district court's exclusion of testimony from a psychologist and a false confessions expert, which would have helped undercut the credibility of his statements. First, he argues the exclusion deprived him of his constitutional right to present a defense under *Crane v. Kentucky*, 476 U.S. 683, 687 (1986), which is a claim we review de novo. *See United States v. Ross*, 206 F.3d 896, 898-99 (9th Cir. 2000). Because Ansari introduced substantial evidence about the circumstances of his confession, we hold this particular exclusion did not deprive him of his constitutional right to present a defense. *See Crane*, 476 U.S. at 689 (a defendant cannot be "stripped of the power to describe to the jury the circumstances that prompted his confession"); *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009) ("[A] defendant's right to present

3                                                          23-2703

relevant evidence is not unlimited[.]" (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998))).

Second, Ansari argues that, even if not a constitutional deprivation, the exclusion of the experts' testimony was an abuse of discretion. If we agree, reversal is required "unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997). Here, Ansari challenged the reliability of his statements through his own testimony, cross-examination of the agents, and interview excerpts. Moreover, even if admitted, the experts' testimony would have been considered alongside compelling evidence of Ansari's guilt, including eyewitness and victim testimony. We therefore conclude it is more probable than not that the rulings, even if erroneous, did not affect the verdict.

4. Ansari also appeals from the district court's admission of statements from his interview that occurred after he purportedly conditionally invoked his right to counsel like the suspect in *Smith v. Endell*, 860 F.2d 1528, 1529-30 (9th Cir. 1988). The district court denied the motion, concluding that Ansari's statements were not unequivocal or unambiguous requests for counsel as required by *Davis v. United States*, 512 U.S. 452, 459 (1994), which post-dates *Smith*. We review whether a defendant's words invoked his right to counsel de novo. *United States v. Rodriguez*, 518 F.3d 1072, 1076 (9th Cir. 2008). Based on our independent

assessment of his statements, we conclude Ansari's alleged invocation could lead a reasonable officer to believe "only that [Ansari] *might* be invoking the right to counsel," *Davis*, 512 U.S. at 459, and thus the district court did not err by admitting Ansari's subsequent statements.

5. Next, Ansari argues he was denied his right to an impartial jury because a prospective alternate, whom he later struck, made prejudicial statements in front of the empaneled jury. We review this claim de novo. *See United States v. Milner*, 962 F.2d 908, 911 (9th Cir. 1992). Ansari relies on *Mach v. Stewart*, in which we vacated a conviction after determining the jury had been infected by repeated, inflammatory, and expert-like comments from a prospective juror about the conduct charged. 137 F.3d 630, 633-34 (9th Cir. 1998). We conclude the comments here, which described anecdotal, secondhand knowledge of inappropriate conduct towards flight attendants, differ meaningfully from those in *Mach* and did not result in a partial jury.

6. Ansari also challenges the limitations the district court imposed on Dr. Raphael Pelayo's testimony as a sleep specialist. While the district court permitted Dr. Pelayo to testify about "general human behavior while sleeping," which has been the subject of "long-established medical research and clinical practice," it excluded any testimony about Ansari's sleep patterns or behavior on the flight, which was based on "untested, self-serving hearsay." The court also excluded Dr.

Pelayo's testimony that lay people were unable to tell when a person was fake sleeping, which it determined was "a bit of a leap." Under the deferential abuse of discretion standard, we conclude the district court's limitation on Dr. Pelayo's testimony was consistent with its gatekeeper role under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).

7. Ansari challenges the admission under Rule 701 of opinion testimony from lay witnesses stating their belief that Ansari was fake sleeping on the flight after the assault. *See* Fed. R. Evid. 701. We review the ruling for abuse of discretion. *United States v. Rodriguez*, 971 F.3d 1005, 1017 (9th Cir. 2020). After reviewing the challenged testimony, we agree it was within the scope of Rule 701, and the district court did not abuse its discretion by so concluding. *See United States v. Beck*, 418 F.3d 1008, 1013-15 & n.3 (9th Cir. 2005) (lay opinion testimony is within the meaning of Rule 701 when it is "based upon personal observation and recollection of concrete facts" (citation omitted)).

8. Lastly, Ansari argues the trial court's cumulative errors warrant reversal. Because the only potential error was the exclusion of expert testimony, which was harmless, there was no cumulative error. *See United States v. Anekwu*, 695 F.3d 967, 988 (9th Cir. 2012).

**AFFIRMED**.

*United States v. Ansari*, No. 23-2703

KOH, Circuit Judge, concurring:

I join the memorandum disposition in full. However, I write separately to underscore that, in my view, the district court abused its discretion when it excluded the testimony of Dr. Leo, although I agree that this error was not of constitutional dimension and was harmless.

*First*, Dr. Leo's testimony satisfied Rule 702's reliability criteria. The notion that expert testimony based in the social sciences can never satisfy *Daubert* is plainly incorrect. *See United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). Dr. Leo is a leading expert in the field of false confessions, so much so that his work has been cited by both this Court and the Supreme Court in evaluating whether a confession was voluntary. *See Corley v. United States*, 556 U.S. 303, 321 (2014); *United States v. Preston*, 751 F.3d 1008, 1022, 1027 (9th Cir. 2014) (en banc). It would be strange to hold that the courts may rely on Dr. Leo's work in deciding the legal question of voluntariness, but the jury may not even consider it in evaluating the factual question of whether a confession was coerced.

*Second*, Dr. Leo's testimony could have been helpful to the jury. We have held that "false confessions are an issue beyond the common knowledge of the average layperson," and juries benefit from "expert knowledge about the science of

1

coercive interrogation tactics." *Tekoh v. County of Los Angeles*, 75 F.4th 1264, 1266 (9th Cir. 2023).

*Third*, Dr. Leo's testimony would not have violated Rule 704(b)'s prohibition of expert testimony "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Dr. Leo's testimony exclusively concerned whether defendant falsely confessed, which is not "an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Rule 704(b) also does not apply where, as here, the expert testifies about the mental state of individuals in the defendant's position generally, rather than the mental state of this particular defendant. *See Diaz v. United States*, 144 S. Ct. 1727, 1734 (2024) (holding Rule 704(b) did not prohibit expert testimony that "most drug couriers know that they are transporting drugs" because the expert "did not express an opinion about whether [defendant] herself knowingly transported methamphetamine").