NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 7 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-556 |
| Plaintiff - Appellee, | D.C. No. 3:21-mj-03297-WVG-GPC-1 |
| v. | |
| FREDDY DANIEL MUNOZ-PEREZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Submitted December 4, 2025[**]
Pasadena, California

Before: CALLAHAN and KOH, Circuit Judges, and BARKER, District Judge.[***]

Appellant Freddy Daniel Munoz-Perez appeals his conviction for illegal entry

under 8 U.S.C. § 1325(a)(1). Munoz-Perez argues that § 1325 is unconstitutional

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel previously ordered that the case be submitted on the briefs and record without oral argument. *See* Dkt. No. 52; Fed. R. App. P. 34(a)(2).

[***] The Honorable J. Campbell Barker, United States District Judge for the Eastern District of Texas, sitting by designation.

under the Fifth Amendment's Equal Protection Clause and that his statements from his field interview and station interview were admitted at trial in violation of the Fourth Amendment. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294, and we affirm.

1. Munoz-Perez argues that § 1325 is unconstitutional under the Fifth Amendment's Equal Protection Clause because Congress allegedly created the law with discriminatory intent. Ninth Circuit precedent forecloses that argument. *See United States v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023).

2. Munoz-Perez argues that the trial court erred in admitting his un-Mirandized field interview. The court reviews the admissibility of statements potentially obtained in violation of *Miranda* de novo but reviews the underlying factual findings for clear error. *United States v. Brobst*, 558 F.3d 982, 995 (9th Cir. 2009).

We "address[] *Miranda* challenges at the border by asking whether the detention constituted a permissible *Terry* stop, or something more." *United States v. Cabrera*, 83 F.4th 729, 734 (9th Cir. 2023). During *Terry* stops, officers are permitted to briefly detain and question a person without Mirandizing them to confirm or dispel the officer's suspicion that the person may be engaged in criminal activity. *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984). Whether a detention is a permissible *Terry* stop or something more does not turn on whether a person

feels free to leave. *See Cabrera*, 83 F.4th at 734. Rather, the analysis examines (1) whether the detaining agent had reasonable suspicion, (2) the reasonableness of any physical restraint that was used, (3) the duration of the stop, and (4) whether questioning went beyond the justification for the stop. *See id.* at 735.

Agent Alston, the agent who stopped Munoz-Perez, had reasonable suspicion that Munoz-Perez was in the United States illegally. The night before, another agent arrested and handcuffed Munoz-Perez in an area that is near the border but far from a port of entry and that is commonly used for illegal entry, but Munoz-Perez escaped into heavy brush. Agent Alston was aware of the escape when he discovered Munoz-Perez attempting to hide in the brush in a nearby wooded area. When Agent Alston instructed Munoz-Perez to sit up and show his hands, Agent Alston noticed that Munoz-Perez was not wearing shoes and that handcuffs were dangling from one of his wrists. Believing that Munoz-Perez was the person who escaped the night before, Agent Alston handcuffed him and led him for five minutes back to the road where Border Patrol trucks were parked.

Considering those circumstances, which showed that Munoz-Perez posed a flight risk, handcuffing Munoz-Perez was a "limited and reasonable" physical restraint. *Id.* at 735. Thus, "handcuffing [Munoz-Perez] . . . did not convert the *Terry* stop into a custodial arrest." *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005). Neither did walking Munoz-Perez for five minutes to the trucks

transgress the bounds of a *Terry* stop. *See United States v. Galindo-Gallegos*, 244 F.3d 728, 730–32 (9th Cir. 2001), *as amended* (Apr. 25, 2001), *amended*, 255 F.3d 1154 (9th Cir. 2001) (suspect who was caught and returned to a larger group of suspects after fleeing was not in custody); *Cabrera*, 83 F.4th at 735 (holding that suspect detained between border fences was not in custody without reference to whether members of the public were present). Moreover, Agent Alston's questions about Munoz-Perez's citizenship, documentation, and the legality of his presence here were limited to the purpose of the stop. Munoz-Perez was not in custody during the field interview, and the district court did not err in admitting the field-interview statement.

3.      Munoz-Perez argues that his interrogation statements at the Border Patrol station were wrongly admitted at trial because he invoked his right to remain silent. A suspect's invocation must be objectively unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). An invocation is unambiguous if a suspect states his desire to remain silent "sufficiently clearly that a reasonable [agent] in the circumstances would understand" that the suspect is invoking his right. *Garcia v. Long*, 808 F.3d 771, 777 (9th Cir. 2015) (quoting *Davis*, 512 U.S. at 459). When an invocation is ambiguous, officers may continue the interrogation or seek clarification. *Davis*, 512 U.S. at 461.

When asking whether a suspect invoked his rights, we consider whether his

words, in context, are susceptible of another meaning. *See, e.g.*, *United States v. Rodriguez*, 518 F.3d 1072, 1077 (9th Cir. 2008). But we have not required "grammatical precision." *See Sessoms v. Grounds*, 776 F.3d 615, 627 (9th Cir. 2015). For instance, in *Michaels v. Davis*, officers asked Michaels, "Well, what's your side of the story? What happened?" and then said that Michaels could stop talking if there was a question that he did not want to answer. 51 F.4th 904, 919–20 (9th Cir. 2022) (per curiam). Michaels responded, "Okay, that one," which unambiguously invoked his right to remain silent regarding the question, "Well, what's your side of the story? What happened?" *Id.* at 920, 925.

The context of Munoz-Perez's alleged invocation made his statements ambiguous. During the interrogation, the following exchange took place:

| | |
|---|---|
| **Agent:** | . . . Do you understand each one of your rights as I have read them to you? |
| **Munoz-Perez:** | Well . . . yes. |
| **Agent:** | Yes? |
| **Munoz-Perez:** | Yes. |
| **Agent:** | Okay. Are you—are you willing to answer my questions without having an attorney present? |
| **Munoz-Perez:** | Alright. |
| **Agent:** | Yes? I need you to answer each question I ask you, I need you to answer yes or no. |
| **Munoz-Perez:** | Well, truthfully, this, no. |

**Agent:**              What?

**Munoz-Perez:**    With this here, no.[1]

"Well, truthfully, this, no" did not clearly refer to the question regarding Munoz-Perez's willingness to speak because he gestured towards an object on the table between him and the agent while making the statement. The agent may have reasonably believed that Munoz-Perez may have been referring to something other than whether he was willing to speak without an attorney, such as a previous question or something related to the object. And when Munoz-Perez said, "With this here, no," he again gestured towards something on the table. That reinforced the agent's conclusion that he may have been attempting to refer to something other than whether he was willing to speak without an attorney. Therefore, the agent was reasonable in seeking clarification before re-reading the *Miranda* warnings, confirming that Munoz-Perez understood his *Miranda* rights, and obtaining Munoz-Perez's waiver of those rights.

Because Munoz-Perez did not unambiguously invoke his right to remain silent, the admission of his interrogation statements was proper.

**AFFIRMED**.

---

[1]     The transcript is a translation that the district court ruled sufficiently authenticated. The translation's accuracy and admissibility are undisputed.