Filed 8/15/16  P. v. Virk CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C079777 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF 13-4302) |
| v. | |
| SHAWN VIRK, | |
| Defendant and Appellant. | |

After the trial court denied defendant Shawn Virk's motion to suppress his statement to the police (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*)) and his subsequent motion to dismiss the information (Pen. Code, § 995)[1] on the same basis, defendant pleaded no contest to one count of first degree burglary (§ 459) in August 2014 as part of an agreement resolving three pending cases.[2]  The trial court granted three years' formal probation, with various terms and conditions.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  The plea encompassed case Nos. 13-4302 (§ 459), 13-3804 (§ 496), and 13-4189 (Health & Saf. Code, § 11350 [count 1]; §§ 484/488 [count 2]).  The plea included a

1

In February 2015, the trial court revoked defendant's probation because of a probation violation. Thereafter, defendant successfully moved to withdraw his plea so as to preserve the *Miranda* issue for appeal.

After a bench trial conducted, by stipulation of the parties, on the preliminary hearing evidence and the police report, the trial court found defendant guilty of residential burglary as originally charged. The court reimposed defendant's probation.

Defendant contends his motion to suppress his statements should have been granted because (1) the interrogating officer disregarded his invocation of his *Miranda* rights; (2) assuming the invocation was ambiguous, the officer failed to seek clarification; and (3) the record fails to show that defendant understood his right to counsel. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

According to the evidence considered by the trial court at bench trial, defendant admitted stealing bicycles from an open garage in the city of Davis in order to support his heroin habit.

Defendant moved to suppress the statements he made during his custodial interrogation, attaching a partial transcript of the interrogation as an exhibit. The People opposed the motion, attaching a more complete transcript. At the preliminary hearing, the trial court (Judge Stephen Mock) played a compact disc (CD) recording of defendant's interview and admitted the People's transcript in evidence. After the court denied defendant's motion, the parties submitted on the evidence contained in the police report, and the court held defendant to answer on all the pending cases.

---

deferred entry of judgment as to count 1 in case No. 13-4189, contingent on successful completion of a 90-day residential drug treatment program.

2

<u>The Interview</u>

We set out in full the portion of the transcript the parties quote in their appellate briefs, then summarize further parts of the interview also cited by the trial court in its ruling.  The transcript begins as follows:

"SERGEANT BEZUGLOV:  My name is Sergeant Bezuglov in charge of investigation division, this is my business card if you need for future references.  Um, before we start conversating, let me read your rights then I'll explain to you what's going on then if you decide to talk to us, we'll clarify some stuff.  Okay?  I'm a little tired dude, I speak with an accent so if you don't understand me . . .

"[DEFENDANT]:  Oh no [unclear]

"SERGEANT BEZUGLOV:  I'm just, it's like eighteen hours up, so I'm-I'm gonna be, I'm not the brightest guy to begin with, now I'm gonna be real, real slow so just bare with me.

"[DEFENDANT]:  Yeah, I'm tired too.

"SERGEANT BEZUGLOV:  Uh, so . . .

"[DEFENDANT]:  *Before you read them, if you promise I don't go to Yolo tonight, I'll tell you whatever you want to hear.*

"SERGEANT BEZUGLOV:  Okay, I.  Let me read them to you, that's got nothing to do, it's like . . .

"[DEFENDANT]:  Cause I mean if you read em to me . . .

"SERGEANT BEZUGLOV:  It's apples . . .

"[DEFENDANT]:  *What I've heard from my dad is to get a lawyer, so I'm not going to say anything to you cause I . . .*

"SERGEANT BEZUGLOV:  It's gonna be up to you too but my thing is I cannot, I can't ask you questions until I read it to you.  That's one of those things, you can ask for a lawyer at any moment, you can talk to me at this point at hey you know what, at this point, I don't, I don't really want to talk to you, whatever you want to do I'm, one of the

3

things that everybody who knows me, I'm not playing tricks, I'm not playing questions, you can ask me straight up, hey what's gonna happen and I'm gonna tell you without lying. I'm not gonna try to be a con artist, I mean I'll be honest. One thing that I'm not gonna lie, that's I'm not gonna lie.

"[DEFENDANT]: Okay.

"SERGEANT BEZUGLOV: Everything, you know everything that's been with me, I don't need, I don't need tricks to get people to talk to me cause honesty I think is the best policy.

"[DEFENDANT]: No, I mean, if someone's straight forward with me, I'll be straight forward.

"SERGEANT BEZUGLOV: I'm gonna be straight forward with you, but my thing is this is a protocol. I can't-I can't even ask you any questions until you will listen to that.

"[DEFENDANT]: Okay.

"SERGEANT BEZUGLOV: Okay?

"[DEFENDANT]: Alright.

"SERGEANT BEZUGLOV: Okay, so you have the right to remain silent. Do you understand? Anything you say may be used against you in the court of law, do you understand that?

"[DEFENDANT]: Yeah.

"SERGEANT BEZUGLOV: You have the right to the presence of an attorney before and during questioning. Do you understand that? If you can't afford to hire an attorney, one will be appointed for you free of charge before any questioning if you want. Do you understand that?

"[DEFENDANT]: *Yeah, but that would probably take like a couple of hours for like a lawyer to get here.*

"SERGEANT BEZUGLOV: *Well, he's not gonna get here, at three o'clock in the morning, yeah that's not gonna happen. Honestly saying . . .*

"[DEFENDANT]: Okay.

"SERGEANT BEZUGLOV: *I mean, unless you got one on the speed dial, ya know. Honestly saying.*

"[DEFENDANT]: *Alright.*

"SERGEANT BEZUGLOV: So, do you understand all these questions?

"[DEFENDANT]: Yeah.

"SERGEANT BEZUGLOV: Okay. Do you understand what is going on with you tonight?

"[DEFENDANT]: With me?

"SERGEANT BEZUGLOV: Yeah.

"[DEFENDANT]: The [gist] of it, I think." (Italics added.)

Sergeant Bezuglov then told defendant they had probable cause to arrest him for possession of stolen property in another suspect's case, and they had found heroin in defendant's car. Defendant asked: "Where was it?" Sergeant Bezuglov said: "[I]n the middle console." Defendant said: "Oh wow." Sergeant Bezuglov said: "So I'm just telling you what the charges are." Defendant said: "I didn't know it was all that."

Sergeant Bezuglov asked where defendant was getting his heroin from. Defendant said: "I know, I know the guy."

Sergeant Bezuglov asked: "[W]hat's your concern? What . . . do you want to hear from me? Just the, for you to start answering the questions." Defendant said: "That I'm not going to jail tonight." Sergeant Bezuglov said: "Okay, that's, I can't, I can't control that. I can't erase the felony charges. What I can do is and again that's not gonna be up to me, it's gonna be up to the DA is what charges is gonna be presented in court and depending on you know, what we can work out. But it's one of the things is, I'll be

5

honest with you is um, my work with informants before for any felony charges you facing, it[']s gotta be something very significant that you can provide."

After further back and forth on this point, defendant asked: "There's no way, is there any way I'm going to sleep in my bed tonight?" Sergeant Bezuglov said: "No. [¶] . . . [¶] . . . [I]f it's a felony charge I have to book you."

The Trial Court's Ruling

Counsel argued the motion, focusing on the passages we have italicized. The trial court then ruled as follows:

"The Courts have repeatedly said that in order to determine whether an in-custody defendant has made an unequivocal assertion of his rights, the Court needs to do a contextual analysis of the interaction between the officer and the defendant. And that's even more important than what might normally be in this particular situation.

"When one looks at the entire context of the interaction between Bezuglov and the defendant, it is clear that the defendant is attempting to negotiate with the police officer. The defendant starts that negotiation by saying, you know, if you promise I won't go to jail, that's what I assume Yolo means, then I'll tell you anything you want to know.

"So his reference to what his father told him has to be read in that context. And when one reads the entire sentence, which starts with the words, cause, I mean, if you read them to me, and then it follows, what I've heard from my dad is to get a lawyer, so I'm not going to say anything to you cause, that is an equivocal comment about his rights, even more equivocal because it . . . succeeds the beginning of the process of the negotiations in this case.

"Thereafter, Bezuglov does indeed advise the defendant of all of his constitutional rights, his *Miranda* rights, and the defendant says that he understands those rights.

"There is an argument offered by the defendant suggesting that when the defendant says that, that is getting a lawyer, will probably take a couple hours, and the officer says he's not going to get here at 3:00 o'clock in the morning, that's just not going

6

to happen, that somehow that is an assertion of the defendant's right to counsel. The cases have held that as long as the officer's explanation of when someone will be provided with counsel is factually accurate and is not intended to somehow talk the defendant out of asserting his right to counsel, then there's nothing untoward in making such a comment.

"In this case, we know that the conversation does start at 3:00 o'clock in the morning. I don't know of any lawyer who would immediately be available at 3:00 o'clock in the morning at the Davis Police Department. So the statement made by Bezuglov is indeed an accurate statement. So that cannot be read as an assertion of the defendant's right to counsel.

"The defendant continues to try to negotiate even after that[,] asking again whether there's any way he can avoid going to jail that particular night, and the officers tell him, quite correctly, that there's nothing they can do, he's been arrested for a felony, he does have to go to the jail.

"So to summarize, I find that the defendant's comments are part of a negotiation that he has initiated between himself and the police officer and can best be described as equivocal comments that might suggest he wanted to assert his right to remain silent. The officer thereafter advised him of all of his *Miranda* rights, emphasized that the defendant could say at that very moment that he didn't want to talk, but the defendant chose to continue to talk. So I find that this interaction shows a willingness by the defendant to waive his *Miranda* rights, and that Officer Bezuglov and the other officer, who is part of this interview, did nothing to undercut the defendant's willingness to talk.

"So I would deny the motion to suppress the statement made by the defendant to Officer Bezuglov."

The Section 995 Motion

After being held to answer, defendant filed a motion to dismiss the information in case No. 13-4302 pursuant to section 995, arguing that his statements should have been

7

suppressed. The People opposed the motion. The trial court (Judge David Rosenberg) denied it, finding there was no *Miranda* violation.

DISCUSSION

Defendant contends: (1) He invoked his *Miranda* rights, requiring Officer Bezuglov to cease interrogation. (2) Even if defendant's invocation was ambiguous, Officer Bezuglov improperly failed to seek clarification. (3) A waiver cannot be established in any event because the record fails to show defendant understood his right to counsel. (4) The erroneous admission of defendant's statements was prejudicial under the standard of *Chapman v. California* (1968) 386 U.S. 18, 24 [17 L.Ed.2d 705]. We are not persuaded.

" '*Miranda* . . . and its progeny protect the privilege against self-incrimination by precluding suspects from being subjected to custodial interrogation unless and until they have knowingly and voluntarily waived their rights to remain silent, to have an attorney present, and, if indigent, to have counsel appointed. [Citations.] "If a suspect indicates 'in any manner and at any stage of the process,' prior to or during questioning, that he or she wishes to consult with an attorney, the defendant may not be interrogated." [Citations.]' [Citation.]" (*People v. Duff* (2014) 58 Cal.4th 527, 551 (*Duff*).) To cut off interrogation, a defendant's invocation of *Miranda* rights must be unequivocal and unambiguous, meaning that a reasonable police officer would understand that the defendant had invoked the right to silence or requested an attorney. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1105-1108 & fn. 5, citing *Davis v. United States* (1994) 512 U.S. 452, 459, 461 [129 L.Ed.2d 362] [right to counsel] & *Berghuis v. Thompkins* (2010) 560 U.S. 370, 381 [176 L.Ed.2d 1098] (*Berghuis*) [right to remain silent].) "A suspect's expressed willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights. [Citations.]" (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 218-219 (*Sauceda-Contreras*).)

8

In reviewing the denial of a motion to suppress a statement on *Miranda* grounds, we accept the trial court's resolution of the facts if supported by substantial evidence, but independently determine whether the statement was illegally obtained. Where the statement was recorded, the facts surrounding the statement are undisputed and we apply independent review. (*Duff, supra*, 58 Cal.4th at p. 551.)

<u>Defendant Did Not Unequivocally and Unambiguously Invoke His Rights</u>

Without citing any authority on point, defendant asserts that the following statement was an unequivocal and unambiguous invocation of his rights: "What I've heard from my dad is to get a lawyer, so I'm not going to say anything to you cause I . . . ." It was not.

Immediately before defendant said this, he had offered to tell the police whatever they wanted to know, so long as he did not have to go to jail that night. The second statement cannot be viewed apart from the first. At the very least, the statements together made it ambiguous whether defendant truly wished to invoke his rights or was merely trying to "negotiate" with the officer, as the trial court put it.[3]

This is especially so because, even standing alone, defendant's statement did not assert a clear, unequivocal determination to remain silent. Rather, after citing his father's

---

[3] Defendant asserts under another heading in his opening brief: "[T]he trial court's . . . finding of ambiguity was based on an analysis of the exchange beyond the point where [defendant] invoked his rights. However, precedent makes clear the error in this approach, as the statements should only be evaluated for ambiguity in the context of the circumstances leading up to the request. (*Smith v. Illinois* (1984) 469 U.S. 91, 98 [83 L.Ed.2d 488, 495].) Based on the relevant conversation up to the point that [defendant] said he was not going to say anything, no ambiguity can be found." So far as defendant claims the trial court did not base its analysis on his statements before his purported invocation of rights, he is mistaken.

As we have shown, the very first point the court made was that immediately before defendant's purported invocation, he offered to tell the officers whatever they wanted to know if they could assure him he would not go to jail that night. The court mentioned defendant's later statements about his wish to avoid jail only to show that they were consistent with his original statement.

9

advice, it broke off (according to the transcript) amidst an apparent attempt to give reasons for silence, which might have included some qualification or hedge on the lines of his already-expressed wish to stay out of jail.

Furthermore, although the transcript makes it appear that the officer cut off defendant in midsentence, the CD reveals that at this point in the interview defendant and the officer repeatedly talked over each other, and some of what each said is unintelligible. Thus, what is already ambiguous in the transcript is even more so on the CD.

For all these reasons, we reject defendant's claim that he unambiguously invoked his *Miranda* rights.

<u>Officer Bezuglov's Conduct Before Reading the *Miranda* Rights Was Proper</u>

"In the face of an initial equivocal reference to counsel, . . . an officer is permitted to clarify the suspect's intentions and desire to waive his or her *Miranda* rights. [Citation.]" (*Duff, supra*, 58 Cal.4th at p. 553.) However, "[a]lthough officers may seek clarification of an ambiguous request, they are not required to do so. [Citation.]" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1087 (*McCurdy*).)[4]

---

[4] *Duff* notes, without expressly resolving, the tension between Ninth Circuit and California Supreme Court holdings that the officer not only may but *must* clarify the suspect's intentions before initiating substantive questioning (*United States v. Rodriguez* (9th Cir. 2008) 518 F.3d 1072, 1080; *People v. Box* (2000) 23 Cal.4th 1153, 1194) and the United States Supreme Court's post-*Rodriguez* rejection of any such bright-line rule. (*Berghuis*, *supra*, 560 U.S. at p. 387 [*Miranda* satisfied, even without a clear waiver before questioning, if " 'suspect receives adequate *Miranda* warnings, understands them, and has an opportunity to invoke the rights before giving any answers or admissions' "].) (*Duff*, *supra*, 58 Cal.4th at pp. 553-554 & fn. 10.)

Defendant asserts that *Duff* holds the officer "was limited at that point to asking clarifying questions" and that this court must follow that holding (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450). Defendant is mistaken. By citing to *Berghuis* on this issue with a "but cf." signal (*Duff, supra*, 58 Cal.4th at p. 553; *Id*. at p. 553, fn. 10), *Duff* made clear that the *Rodriguez-Box* rule stood on shaky ground. And after *Duff* our Supreme Court itself impliedly rejected that rule. (*McCurdy*, *supra*, 59 Cal.4th at p. 1087.)

10

Defendant asserts that Officer Bezuglov not only did not clarify defendant's intentions, but "ignore[d]" defendant's invocation by "interspers[ing]" his reading of defendant's *Miranda* rights "with discussion of his honesty and forthrightness," which "was obviously an attempt to induce a waiver by building trust, not an effort to seek clarification." This argument fails to show any *Miranda* violation.

After defendant's initial equivocal reference to counsel, Officer Bezuglov repeated over and over that he could not ask any substantive questions until he had read the *Miranda* rights to defendant. He then read out each of the rights fully and obtained defendant's agreement that he understood them. So far as defendant claims that anything the officer said was improper because it did not attempt explicitly to clarify defendant's intentions, *McCurdy* rebuts that claim. (*McCurdy, supra,* 59 Cal.4th at p. 1087.) Furthermore, defendant cites no authority holding that an officer seeking to obtain a *Miranda* waiver may not make comments designed to win a suspect's trust, or that such comments somehow vitiate a waiver once obtained, and we have found no such authority.

<u>Defendant Has Not Shown That He Failed to Understand His Right to Counsel</u>

Even though defendant said "Yeah" when the officer asked if defendant understood his right to counsel, defendant asserts that we may not find a valid *Miranda* waiver because the officer "inadequately explained" the right. According to defendant, the fact that the officer said a lawyer would not be able to come to the station at 3:00 a.m. shows that the officer's advisement was "too ambiguous to clearly apprise [defendant] of the nature of the right he was waiving" because it did not specify the exact period of time defendant would have to wait. We are not persuaded.

"*Miranda* does not require that attorneys be producible on call, or that police 'keep a suspect abreast of his various options for legal representation.' (*People v. Bradford* [1997] 14 Cal.4th [1005,] 1046.)" (*People v. Smith* (2007) 40 Cal.4th 483, 503.) All *Miranda* requires on this point is that a suspect be informed that he has the right to an attorney before and during questioning, and that one will be appointed for him if he

11

cannot afford one. (*Smith*, at p. 503.) The officer gave defendant exactly that information, and defendant said he understood it. Furthermore, as the trial court noted, there was no reason to doubt that the officer spoke accurately when he said a lawyer could not be available at 3:00 a.m. It was clear in context that defendant understood he could have counsel in the near future. It is also clear that he impliedly waived that right, like the other *Miranda* rights, by proceeding to answer the officer's substantive questions. (*Sauceda-Contreras*, *supra*, 55 Cal.4th at pp. 218-219.)

The only supposedly contrary authority defendant cites is inapposite. In *United States v. Bin Laden* (S.D.N.Y. 2001) 132 F.Supp.2d 168, a suspect detained outside the United States was wrongly advised that he had no right to counsel so long as he remained on foreign soil. (*Id*. at pp. 190-191 & fn. 22.) This case does not stand for the proposition that defendant could not knowingly and intelligently waive the right to counsel merely because he was accurately informed that a lawyer could not materialize immediately at the station in the wee hours of the morning.

## DISPOSITION

The order denying defendant's motion to suppress his statements is affirmed.


　　　　　　　　　　　　　　_/s/_____
　　　　　　　　　　　　　　Blease, Acting P. J.

We concur:


_/s/_____
Butz, J.


_/s/_____
Renner, J.

12