Mario ALVAREZ, Petitioner–Appellant,

v.

James H. GOMEZ, Director; Attorney General of The State of California, Respondents–Appellees.

No. 98–55133.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1999.

Filed July 28, 1999.

As Amended Sept. 2, 1999.

Judith Rochlin, Los Angeles, California, attorney for the petitioner-appellant.

William H. Davis, Jr., Deputy Attorney General, Los Angeles, California, attorney for the respondents-appellees.

Before: PREGERSON, BEEZER, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge:

Mario Alvarez, a California state prisoner, appeals the district court's denial of his habeas petition. Alvarez asserts that he is entitled to relief because incriminating statements he made during custodial interrogation were recorded and admitted at trial in violation of the rules set forth in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We agree and reverse.

## I.

On May 2, 1988, Awani Rayyis, a senior industrial waste inspector for the City of Los Angeles, was shot outside of a laboratory he had just inspected. Rayyis made it back to the lobby of the laboratory. Before Rayyis died, he gave a description of his assailant's car and the license plate number. He did not provide any description of the assailant.

Some days later, the investigating officers found the car. Based on fingerprints found on the exterior of the car and on a mug inside of the car, the police obtained a warrant and arrested Alvarez. In three separate interviews, Alvarez confessed that he had shot Rayyis below the waist in an attempt to take his wallet. The statements made in the first interview, which was not recorded, were not introduced into evidence at trial. The second interview was audio taped and the third interview was video taped. The two recorded statements were introduced into evidence at trial.

At the start of the audio taped interview, the following conversation took place between Alvarez and Detectives Miller and Lange:

MILLER:"Do you understand those rights?" (referring to *Miranda* rights)

ALVAREZ:"Yes."

MILLER:"Okay. Do you wanna give up the right to remain silent? Mario, you wanna talk to us about this incident?"

ALVAREZ: **"Can I get an attorney right now, man?"**

MILLER:"Pardon me?"

ALVAREZ: "You can have attorney right now?"

MILLER:"Ah, you can have one appointed for you, yes."

ALVAREZ: "Well, like right now you got one?"

MILLER:"We don't have one here, no. There's not one present now."

LANGE:"There will be one appointed to you at the arraignment, ah, whether you can afford one. If you can't one will be appointed to you by the court."

ALVAREZ:"All right."

MILLER: (says something unintelligible)

ALVAREZ:"I'll—I'll talk to you guys."

MILLER:"Okay. You wanna talk to us without a lawyer here, right?"

ALVAREZ:"Yeah."

The two recorded confessions were central to the prosecution's case. Alvarez was convicted of first degree felony-murder and car theft. He was sentenced to life imprisonment without possibility of parole.

After exhausting his state court remedies, Alvarez filed the instant habeas petition.[1] The magistrate judge who heard Alvarez's petition found that Alvarez had clearly and unequivocally requested the assistance of counsel at the start of the audio taped interview. He accordingly determined that the taped and video confessions were improperly admitted at trial and that the error was not harmless. In his Report and Recommendation, the magistrate judge recommended that the district court grant the habeas petition and vacate the conviction. After a hearing, the district court declined to follow the magistrate judge's Report and Recommendation. The district court concluded that Alvarez's questions were a request for information, not a request for counsel and denied the petition. Alvarez timely appealed.

## II.

Alvarez's habeas petition was filed before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996. Accordingly, we review de novo. *See Lindh v. Murphy,* 521 U.S. 320, 336–37, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.1997).

## III.

Alvarez contends that he invoked his right to counsel at the beginning of the first recorded interview and that the admission of his recorded statements against him at trial therefore violated his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda,* a person in custody must be informed before interrogation that he has a right to remain silent and to have a lawyer present. *Id.* "[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States,* 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (citing *Edwards,* 451 U.S. at 484–85, 101 S.Ct. 1880). "[W]aiver cannot be found from a suspect's continued response to questions, even if he is again advised of his rights." *Smith v. Endell,* 860 F.2d 1528, 1529 (9th Cir.1988) (citing *Edwards,* 451 U.S. at 484–85, 101 S.Ct. 1880).

Whether a suspect has invoked the right to counsel is an objective inquiry. *See Davis,* 512 U.S. at 458–59, 114 S.Ct. 2350. A request for counsel need not be stated as a model of eloquence and clarity in order to qualify as an unequivocal invocation of the right to counsel. *See id.* at 459, 114 S.Ct. 2350. However, "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* (citations omitted); *see also, United States v. de la Jara,* 973 F.2d

---

1. Alvarez also contends in his petition that he was not given adequate notice that he was being prosecuted under a felony-murder theory. This contention is without merit.

746, 750 (9th Cir.1992) (noting that a suspect's words must be taken "as ordinary people would understand them").

■ Alvarez asked three questions: (1) "Can I get an attorney right now, man?" (2) "You can have attorney right now?" and (3) "Well, like right now you got one?" A review of the relevant authority reveals that Alvarez's thrice-repeated questions, when considered together, constituted an unequivocal request for an attorney. *See e.g., Smith v. Illinois,* 469 U.S. 91, 97, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (deeming a suspect's statement, "Uh, yeah, I'd like to do that," upon hearing of his right to counsel a clear invocation); *de la Jara,* 973 F.2d at 750 (deeming "Can I call my attorney?" or "I should call my lawyer"[2] a clear invocation of the right to counsel); *Robinson v. Borg,* 918 F.2d 1387, 1389 (9th Cir. 1990) (deeming "I have to get me a good lawyer, man. Can I make a phone call?" a clear invocation of the right to counsel); *Shedelbower v. Estelle,* 885 F.2d 570, 571–73 (9th Cir.1989) (deeming "You know, I'm scared now. I think I should call an attorney" a clear invocation of the right to counsel); *Smith,* 860 F.2d at 1529–31 (deeming "Can I talk to a lawyer?" a clear invocation of the right to counsel). Moreover, we disagree with the district court's conclusion that the officers "clearly believed that Petitioner was merely asking clarifying questions regarding his right to counsel," and answered those questions in "good faith." The correct answer to each of Alvarez's three questions, after all, was a simple unambiguous "yes."[3]

■ Alvarez made the requisite "expression of a desire" for the help of a lawyer if one were available. *Davis,* 512 U.S. at 459, 114 S.Ct. 2350. Accordingly, the police should have discontinued the interview at that point and not subjected Alvarez to any further questioning until after he had had an opportunity to consult with a lawyer or until he, on his own initiative, resumed the conversation. *See Edwards,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Because Alvarez's subsequent *Miranda* waivers in the recorded interviews were in response to further police initiated questioning, these waivers are without effect. A valid waiver "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation" even after being newly advised of his rights. *Edwards,* 451 U.S. at 484, 101 S.Ct. 1880; *see also Desire v. Attorney General of California,* 969 F.2d 802, 804–805 (9th Cir.1992) (defendant's "unhonored request for counsel vitiate[d] his subsequent decision to talk without counsel's presence"). Accordingly, the statements recorded during those interviews should have been suppressed.

## IV.

■■ Because this is collateral review, Alvarez's conviction may be reversed if the improper admission of his statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotation omitted). If a de novo review of the record finds the facts in "equipoise," however, a habeas court should "treat the error ... as if it affected the verdict" and grant the petition. *O'Neal v. McAninch,* 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ Respondents assert that any error was harmless. They point to three pieces of evidence in support of this contention: 

1. Fingerprints: Before he died, the victim described his assailant's car and gave the license number. One fingerprint on the outside of the stolen car was

---

2. The accused's invocation of his right to counsel was in Spanish ("debo yo llamar a mi abogado") and could have been a question or a statement. With the aid of other evidence, the court concluded that he was asking to call his attorney.

3. There were some 40–50 signs posted throughout the jail area informing arrestees of the around the clock availability of *Miranda* duty lawyers. Alvarez was not taken through this area.

matched to Alvarez. Eleven others were also found on the car's exterior which did not match to Alvarez or the owner. Alvarez's fingerprints were also found on a mug inside the car, again along with a fingerprint from an unknown individual. There were no usable fingerprints lifted from the interior surfaces of the car.

2. Bullets: The victim was killed with .22 caliber bullets. Alvarez had .22 caliber bullets in his home. Beyond that, the bullets were not linked with the murder in any other manner.

3. Alvarez's behavior upon arrest: When Alvarez was arrested, he "ran rapidly from one side of the room to the other." The government asserts that this behavior indicates a guilty conscience and an attempt to flee.

This evidence is equivocal and leaves room for reasonable doubt. Further, a "defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (internal quotation and citation omitted). The recorded confessions, at a minimum, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (quotation omitted).

Further, Alvarez was convicted of first degree murder under a felony—murder theory. Absent the recorded confessions, there was *no* other evidence before the jury linking him to the predicate felony charged by the state—the robbery of Rayyis.

The admission of the recorded confessions was not harmless error with respect to the car theft conviction. Without the confessions, there was arguably insufficient evidence before the jury to support a conviction. To convict, the government had to establish that (1) Alvarez took or drove the car of another; (2) the owner did not consent; and (3) Alvarez had the *specific intent* to deprive the owner of his title to or possession of the vehicle. *See* Cal.

Veh.Code § 10851. The fingerprints are probative of the first element. The owner testified at trial as to the second element. But there was no other evidence presented to meet the third element. The government did not make a harmless error argument with respect to the car theft conviction.

At the very least, the facts of this case are in equipoise. As such, we must grant the petition. *See O'Neal*, 513 U.S. at 435, 115 S.Ct. 992.

## V.

Alvarez's repeated questions about the immediate availability of an attorney were a clear and unequivocal invocation of his *Miranda* right to counsel, and he did not thereafter waive that right. Consequently, the recorded statements taken subsequent to his invocation of his right to counsel should have been suppressed under *Edwards*. The confessions were central to his conviction and their admission was not harmless.

**REVERSED. PETITION GRANTED.**