Filed 12/14/23  P. v. Ramires-Lopez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B322299 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA437992) |
| v. | |
| REYNALDO RAMIRES-LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed in part, vacated in part, and remanded.

Melissa Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Assistant Attorney General, Susan Pithey, Senior Assistant Attorney

General, Noah Hill and Steven Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

A jury convicted defendant Reynaldo Ramires-Lopez of second degree murder and assault with a deadly weapon. On appeal, Ramires-Lopez contends the trial court erred in admitting statements he made during a custodial interrogation in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). He also argues the trial court abused its discretion in sentencing him on the assault conviction. The People concede that the court misunderstood its sentencing discretion and that the sentence should be modified. We vacate the sentence on the assault conviction but otherwise affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2012, Ramires-Lopez, Mario Cosme-Arellanes, and several other men lived in a house in Los Angeles. On July 3, Ramires-Lopez and Cosme-Arellanes were drinking beer on the front porch of the house with their friend, Noe Hernandez-Garcia, and a few other men. Ramires-Lopez and Hernandez-Garcia began play-boxing. Ramires-Lopez stumbled, became upset, and left the porch. He later returned and struck Hernandez-Garcia with a machete three times in the hands and back. Hernandez-Garcia fled. As he ran away, he heard Cosme-Arellanes urging Ramires-Lopez to calm down.

That night, the owner of the house awoke to the sound of fighting. When he looked out the window, he saw Cosme-Arellanes leaving the property quickly with Ramires-Lopez following closely behind. A police officer found Cosme-Arellanes early the next morning, lying face down and covered in blood. He

2

had 17 injuries caused by a heavy, sharp instrument. He later died from his injuries.

The murder went unsolved for several years. Police officers detained and interviewed the occupants of the house, but Ramires-Lopez had fled. In 2015, investigators located and interviewed Hernandez-Garcia, leading police to identify Ramires-Lopez as a suspect.

***The Custodial Interview***

In December 2018, authorities arrested Ramires-Lopez on unrelated charges in New York. Los Angeles Police Department detectives traveled to New York to interview him. The interview was videotaped. The detectives advised Ramires-Lopez of his rights under *Miranda* at the start of the interview. Ramires-Lopez indicated he understood his rights and did not object to answering the detectives' questions.

During the interview, Ramires-Lopez told officers his name was Nelson Ramirez (with a "z") Lopez. He provided a false birthdate. He also told officers he had moved to New York directly from El Salvador two years earlier (i.e., in late 2016), and claimed he had never been to California or Colorado. These statements were false. Ramires-Lopez lived in California in 2012, and police had pulled him over during a traffic stop in Colorado in June 2015.

The following colloquy ensued:[1]

> [Detective]: And [unintelligible] Spanish [unintelligible] Colorado? That's the name of the state.

---

[1] The interview was conducted in Spanish. A certified translation of the interview transcript was used at trial.

3

[Ramires-Lopez]: No.

[Detective]: You haven't been there?  Okay.  And you say you've never been to ca—California either?

[Ramires-Lopez]: Neither.

[Detective]: Okay.  [Unintelligible].

[Ramires-Lopez]: That's why I want . . . uh, I want to know what's going on.  And, and—I think when I get there uh—how could I um, get introduced [sic] to a lawyer, could I talk to a lawyer about . . .

[Detective]: Yes, um . . .

[Ramires-Lopez]: . . . about this situation.

[Detective]: If you have charges belonging to another place [unintelligible] put in Colorado, if they put [sic] in California, if they put in New Mexico wherever the orders were the arrest warrants [sic] . . .

[Ramires-Lopez]: Uh-huh . . . .

[Detective]: . . . What's going to happen is that um, you're going to get a—and to talk appointment for court [sic] to talk about it.

[Ramires-Lopez]: Yes, that's why [unintelligible].

The interview continued.  The detective produced a photograph depicting Ramires-Lopez, Hernandez-Garcia, and three other individuals.  Ramires-Lopez conceded he was in the

4

photograph, but claimed he only knew Hernandez-Garcia and the others as friends of another man, "Jose." The detective then produced a photograph of Ramires-Lopez with Cosme-Arellanes. Ramires-Lopez stated he also knew Cosme-Arellanes only as a friend of Jose.

Ramires-Lopez eventually told detectives: "I think I need my lawyer so I can talk about it." The interview ended shortly thereafter.

Before trial, the People moved to admit portions of the interview as described above. Defense counsel objected, arguing Ramires-Lopez's question about being "introduced to a lawyer" was an invocation of the right to counsel which the detectives ignored, violating his *Miranda* rights. Counsel argued the trial court should therefore exclude any statements Ramires-Lopez made after that question. The trial court concluded Ramires-Lopez's reference to a lawyer was not an invocation of the right to counsel, but instead reflected Ramires-Lopez "trying to understand the procedures." The court therefore admitted the contested portion of the interview in which Ramires-Lopez said he did not know the names of Hernandez-Garcia and Cosme-Arellanes, and he knew them only as friends of Jose. At trial, witnesses testified Ramires-Lopez was friendly with both Hernandez-Garcia and Cosme-Arellanes.

### Sentencing

A jury convicted Ramires-Lopez of the second degree murder of Cosme-Arellanes (Pen. Code § 187, subd. (a))[2] and assault with a deadly weapon for the attack on Hernandez-Garcia (§ 245, subd. (a)(1)). The trial court found true the allegation that

---

[2] All undesignated statutory references are to the Penal Code.

5

Ramires-Lopez had suffered a prior serious felony conviction. (§ 667, subd. (d); § 1170.12, subd. (b).)

The trial court sentenced Ramires-Lopez to state prison for an indeterminate term of 30 years to life for second degree murder (count 1), consisting of 15 years to life, doubled because of the prior strike. As to the assault with a deadly weapon conviction (count 2), the trial court imposed a determinate term of four years, consisting of two years, doubled because of the prior strike. (§ 667, subd. (e)(1).)

## DISCUSSION

## I. The Trial Court's Admission of the Interview Excerpt Was Not Reversible Error

Ramires-Lopez argues law enforcement violated his *Miranda* rights by continuing to interview him after he invoked his right to counsel, thus the trial court erred in admitting the portion of the interview that occurred after that invocation. We find no prejudicial error.

### A. Applicable legal principles

"The applicable law is settled: ' "As a prophylactic safeguard to protect a suspect's Fifth Amendment privilege against self-incrimination, the United States Supreme Court, in *Miranda*, required law enforcement agencies to advise a suspect, before any custodial law enforcement questioning, that 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' [Citations.]" ' [Citation.]" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1085–1086.) The suspect may waive these rights so long as the waiver is knowing and voluntary. (*Id*. at p. 1086.)

6

"When a defendant has waived his *Miranda* rights and agreed to speak with police, any subsequent invocation of the right to counsel must be unequivocal and unambiguous." (*People v. Frederickson* (2020) 8 Cal.5th 963, 1011 (*Frederickson*).) "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." (*Davis v. United States* (1994) 512 U.S. 452, 459 (*Davis*).)

Where, as here, the defendant's custodial interview was recorded and transcribed, "we engage in a de novo review of the legal question of whether the statement at issue was ambiguous or equivocal." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1105 (*Bacon*).)[3]

### B. Ramires-Lopez did not unequivocally request counsel

Ramires-Lopez waived his right to counsel following the initial *Miranda* warning, and he does not challenge the validity of that waiver on appeal. The detectives could properly continue the interrogation unless and until Ramires-Lopez clearly requested counsel. Any subsequent invocation of the right to

---

[3]  The People argue the court made a "factual finding" that Ramires-Lopez's inquiry was not a request for counsel and this aspect of the trial court's decision should be reviewed for substantial evidence. Not so. Since the interview was recorded, the facts regarding what was said could not be disputed. The trial court's conclusion that Ramires-Lopez's statement did not invoke his *Miranda* rights reflected the court's application of law to a set of undisputed facts. We independently review that legal conclusion. (*Bacon, supra*, 50 Cal.4th at p. 1105.)

counsel had to be "unequivocal and unambiguous." (*Frederickson*, *supra*, 8 Cal.5th at p. 1011.)

Ramires-Lopez argues the following statement was a sufficiently clear request for the assistance of counsel: "And, and—I think when I get there uh—how could I um, get introduced [sic] to a lawyer, could I talk to a lawyer about . . . [¶] . . . [¶] . . . about this situation." We disagree.

*Frederickson* is instructive. In *Frederickson*, the defendant initially waived his right to counsel. During the interrogation that followed, the defendant asked officers: " 'Hey, when am I going to get a chance to call my lawyer? It's getting late, and he's probably going to go to bed pretty soon.' " (*Frederickson*, *supra*, 8 Cal.5th at p. 1011.) Our Supreme Court reasoned this was not an unambiguous invocation of the right to counsel, because a reasonable police officer "would have concluded that defendant's remark expressed concern over the length of the interview and a desire to contact counsel when the interview was over." (*Ibid*.)

Similarly, here, Ramires-Lopez framed his statement with the conditional and ambiguous words, "when I get there," immediately after being asked if he had ever been to California or Colorado. This suggested that Ramires-Lopez's interest in speaking to a lawyer was contingent on his arrival at some other location (such as California or Colorado), and at a later time. As in *Frederickson*, a reasonable officer would have understood this to convey that Ramires-Lopez wished to obtain a lawyer sometime after the interview. (*Frederickson*, *supra*, 8 Cal.5th at p. 1011.)

Ramires-Lopez argues we should ignore the reference to California and his use of the terms "when" and "there," and instead focus solely on the second part of the statement: "how

8

could I um, get introduced [sic] to a lawyer, could I talk to a lawyer about . . . [ ] about this situation." We disagree that the second part of the statement should be construed without reference to what came before. "[A]s is true with most questions of interpretation, context does matter," and "[w]hether or not a reasonable officer would perceive a suspect's statement as ambiguous may depend on context." (*People v. Flores* (2020) 9 Cal.5th 371, 418, 417.) As discussed above, the context frames the request and renders it unclear.

Further, even accepting Ramires-Lopez's argument, we would still conclude his statement was ambiguous. Ramires-Lopez asked "how" he could "get introduced to a lawyer," and if he "could" talk to a lawyer. Courts have concluded requests framed by such conditional terms are not unequivocal invocations of the right to counsel. For example, in *People v. Sauceda-Contreras* (2012) 55 Cal.4th 203 (*Sauceda-Contreras*), the defendant stated: " 'If you can bring me a lawyer . . . that way I can tell you everything that I know and everything that I need to tell you and someone to represent me.' " (*Id*. at p. 219.) Because this statement was "conditional in that it began with an inquiry," our Supreme Court concluded it was not an unequivocal request for counsel. (*Ibid*.) As in *Sauceda-Contreras*, Ramires-Lopez's statement was conditional, thus "a reasonable officer under the circumstances would not have understood defendant's [statement] to be a clear and unequivocal request for counsel." (*Ibid*.; *People v. Shamblin* (2015) 236 Cal.App.4th 1, 18–19.)

Finally, Ramires-Lopez cites several cases in which courts determined that a defendant's statement was unambiguous and contends his statement was similar. Yet, in each example cited, the defendant made a far more definite and immediate request

9

for counsel. In *Smith v. Illinois* (1984) 469 U.S. 91, 93, after being advised of the right to counsel, the defendant stated: " 'Uh, yeah. I'd like to do that.' " In *In re Art T.* (2015) 234 Cal.App.4th 335, 356, the defendant expressly asked, " 'Could I have an attorney?' " In *People v. Henderson* (2020) 9 Cal.5th 1013, 1023, the defendant responded to a question by saying, " '[I] want to, speak to an attorney first.' " In *Alvarez v. Gomez* (9th Cir. 1999) 185 F.3d 995, 998, the defendant asked, " 'Can I get an attorney right now, man?' " Similarly, in *Tobias v. Arteaga* (9th Cir. 2021) 996 F.3d 571, 580, the defendant asked, " 'Could I have an attorney?' " In *Mays v. Clark* (9th Cir. 2015) 807 F.3d 968, 971, the defendant said: " 'My—my step-dad got a lawyer for me. [¶] . . . [¶] I'm going to—can—can you call him and have my lawyer come down here?' " In *Sessoms v. Grounds* (9th Cir. 2015) 776 F.3d 615, 619, the defendant asked, " 'There wouldn't be any possible way that I could have a—a lawyer present while we do this?' " followed by, " 'uh, give me a lawyer.' " In *Smith v. Endell* (9th Cir. 1988) 860 F.2d 1528, 1529, the defendant asked, " 'Can I talk to a lawyer?' " In *Anderson v. Terhune* (9th Cir. 2008) 516 F.3d 781, 786, the defendant stated, " 'I plead the [F]ifth.' "

In contrast to these clear demands, Ramires-Lopez's statement included several equivocal and conditional terms. He framed his statement with "when I get there" and asked "how" he could be "introduced to a lawyer." This fell far short of asking "to stop the interview immediately and consult counsel." (*Frederickson, supra*, 8 Cal.5th at p. 1011.) At most, a reasonable officer "would have understood only that [he] *might* be invoking the right to counsel." (*Ibid.*) This was insufficient to require "the cessation of questioning." (*Davis, supra*, 512 U.S. at p. 459.) The

trial court did not err in concluding there was no *Miranda* violation or in admitting the contested interview excerpt.

### C. Any error was harmless beyond a reasonable doubt

Even if Ramires-Lopez's inquiry could be considered an unambiguous request for counsel, the record establishes that any trial court error in admitting the challenged interview excerpt was not prejudicial.

In the contested interview excerpt, Ramires-Lopez denied that he knew several individuals shown in two photographs, including the two victims. At trial, witnesses testified that Ramires-Lopez was friends with both victims. Ramires-Lopez argues on appeal these "guilty denials" made it more likely jurors would discredit defense counsel's arguments, and less likely the jury would return a verdict of not guilty or find he committed only the lesser included offense of involuntary manslaughter. We disagree.

Ramires-Lopez's statements that he was only minimally acquainted with the victims were not inculpatory and they did not directly address the crimes. (*People v. Cunningham* (2001) 25 Cal.4th 926, 994 [any *Miranda* error harmless when admitted statements not inculpatory and at most revealed general lack of veracity].) Further, they were no more suggestive of guilt than other statements he made earlier in the recorded interview that were admitted without objection. For example, Ramires-Lopez gave a false name and date of birth, told officers he moved to the United States in late 2016, and claimed he had never been to California. Other evidence established these statements were clearly false. Under these circumstances, Ramires-Lopez's statements minimizing his knowledge of the victims did not

11

"have high value in the overall evidentiary calculus." (*People v. Caro* (2019) 7 Cal.5th 463, 493.) Even if the trial court erred in admitting the statements relating to the photographs, we would find any error harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

## II. The Sentence on Count 2 Must Be Vacated Because the Trial Court Misunderstood Its Sentencing Discretion

Ramires-Lopez argues the trial court misunderstood, and therefore abused, its discretion in sentencing him on count 2, assault with a deadly weapon, and the People agree. We vacate the sentence as to count 2 and remand to the trial court for resentencing.

### A. Background

At the sentencing hearing, the trial court first heard, and denied, Ramires-Lopez's *Romero* motion.[4] On count 1, second degree murder, the court imposed a sentence of 15 years to life, doubled to 30 years to life due to the prior strike.

On the assault with a deadly weapon count, the court initially indicated it would impose a consecutive sentence of "one-third the mid-term of three years times two," and that it would exercise its discretion not to impose a five-year violent felony prior enhancement, resulting in a sentence of two years. However, the court subsequently expressed concern that it did not have the authority to impose the indicated sentence, and that it was "trying to get back to the two years that I've indicated was appropriate." The court stated it believed a consecutive sentence was appropriate, then indicated it would impose the low term of

---

4       *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

12

two years and exercise its discretion to dismiss the prior strike conviction as to count 2 only.

The People expressed concern that the indicated sentence was not authorized. After discussion with counsel, the court stated: "I don't know if this is an illegal sentence, but at least by having the defendant agree to it, personally, it won't be an issue on appeal . . . . The intention is to give him what I indicated." The court asked Ramires-Lopez if he agreed the court could dismiss his prior strike conviction for purposes of sentencing him on count 2. Ramires-Lopez refused to stipulate on any sentencing issues. Defense counsel asked the court to impose a concurrent sentence on count 2. The trial court repeated that it believed Ramires-Lopez should be sentenced consecutively for the attack on Hernandez-Garcia. The court accordingly imposed the low term of two years, doubled to four years due to the prior strike conviction.

### B.  Discussion

The trial court and counsel expressed concern that the court did not have the discretion to strike Ramires-Lopez's prior serious felony conviction as to the determinate count only. However, our Supreme Court has recognized that "[w]hen a proper basis exists for a court to strike prior conviction allegations as to at least one current conviction, the law does not require the court to treat other current convictions with perfect symmetry if symmetrical treatment would result in an unjust sentence." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) The People concede, and we agree, that the trial court had the discretion to dismiss the prior strike as to count 2 only and to impose a consecutive low term sentence of two years. (*People v.*

13

*Carmony* (2004) 33 Cal.4th 367, 378 [abuse of discretion occurs where trial court is not aware of its discretion to dismiss].)

When the trial court misunderstands its discretion, the appropriate remedy is to vacate the sentence and remand for resentencing, and we do so here. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) We decline the People's request that we modify the sentence rather than remanding. Although Ramires-Lopez does not object to the People's proposal, we note that while the trial court repeatedly expressed its desire to impose a two-year sentence on count 2, it also initially denied the *Romero* motion and ultimately did not dismiss the prior strike. We therefore find it appropriate to vacate the sentence as to count 2, and remand to the trial court to exercise its sentencing discretion in the first instance.

## DISPOSITION

The sentence as to count 2 is vacated and the matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

LAVIN, J.

15